1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  BRIAN C. KINNEY, State Bar No. 245344
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5255
     Fax:  (415) 703-5843
8    Email:  Brian.Kinney@doj.ca.gov

9  Attorneys for Respondent Warden Robert Ayers

10                IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

| | |
|---|---|
| **Jose Ybarra,** | C07-2802 MMC |
| Petitioner, | **ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **Robert Ayers, Warden,** | |
| Respondent. | Judge: The Honorable Maxine M. Chesney |

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
ANYA M. BINSACCA
Supervising Deputy Attorney General
BRIAN C. KINNEY, State Bar No. 245344
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5255
 Fax:  (415) 703-5843
 Email:  Brian.Kinney@doj.ca.gov

Attorneys for Respondent Warden Robert Ayers

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **Jose Ybarra,**<br><br>                              Petitioner,<br><br>         **v.**<br><br>**Robert Ayers, Warden,**<br><br>                              Respondent. | C07-2802 MMC<br><br>**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  The Honorable Maxine M. Chesney |

## INTRODUCTION

Petitioner Jose Ybarra, an inmate at San Quentin State Prison serving an indeterminate life

sentence for murder, represents himself in this habeas corpus action.  Petitioner alleges that the

Board of Parole Hearings unconstitutionally denied him parole at his December 1, 2005

subsequent parole consideration hearing.  Specifically, Petitioner argues that the Board violated

his due process rights by:  (1) failing to provide his criminal-trial defense attorney adequate

notice of the parole consideration hearing; (2) considering irrelevant and unreliable evidence;

and

/ / /

/ / /

1    (3) misapplying its regulations to deny parole.[1/]

2        The Court issued a June 13, 2007 Order to Show Cause why Ybarra's petition should not be

3    granted.  Respondent Warden Robert Ayers answers as follows:

4                          **ANSWER TO THE ORDER TO SHOW CAUSE**

5        In response to the Petition for Writ of Habeas Corpus filed on May 30, 2007, Respondent

6    hereby admits, denies, and alleges the following:

7        1.    Petitioner is lawfully in the custody of the California Department of Corrections and

8    Rehabilitation (CDCR) following his June 10, 1980 conviction of second-degree murder.  (Ex.

9    A, Abstract of Judgment.)  He is currently serving an indeterminate sentence of twenty years to

10   life with a five-year enhancement for use of a weapon.  (*See id.*; Ex. B, Life Prisoner Evaluation

11   Report, at 1.)  Petitioner does not challenge his underlying conviction in the current proceeding.

12       2.    Respondent affirmatively alleges that on November 10, 1979, Petitioner entered the

13   residence of John Barbutes and immediately began punching Mr. Barbutes, a paraplegic, about

14   the face and head.  (Ex. B, at 1; Ex. C, Probation Officer's Report, at 3 - 4.)  Petitioner then

15   obtained a frying pan from the kitchen and used it to beat Ms. Delgado, the murder victim.  (*Id.*)

16   Petitioner beat her to the point of unconsciousness.  (*Id.*)  He also began kicking Ms. Delgado

17   and, at some point, tried to choke her.  (*Id.*)  When Mr. Barbutes attempted to assist Ms.

18   Delgado, Petitioner struck Mr. Barbutes in the head with a glass bottle.  (*Id.*)  Petitioner then fled

19   the scene.  (*Id.*)  Ms. Delgado was hospitalized and died three days after the attack from the

20   injuries caused by Petitioner.  (*Id.*)  Mr. Barbutes was also hospitalized but recovered from his

21   injuries.  (*Id.*)  Prior to Petitioner's arrest and while Mr. Barbutes recovered in the hospital,

22   Petitioner threatened Mr. Barbutes with bodily harm if he testified against him.  (*Id.*)  At the

23   trial, Mr. Barbutes testified that two days before the November 10th attack Petitioner told Mr.

24   Barbutes that he would kill Ms. Delgado.  (*Id.*)  Prior to the murder, Petitioner had a long-term

25   relationship with the victim, Ms. Delgado, however, she was living with Mr. Barbutes at the time

26   _____

27        1. The Court summarily dismissed Petitioner's other three claims - consisting of due process
     challenges to habeas denials by the California Supreme Court, California Court of Appeal, and San
28   Francisco County Superior Court - because they failed to state a cognizable claim for federal habeas
     relief.  (Order, at 2 - 3.)

1  of the killing.  (*Id.*)

2      3.    Respondent affirmatively alleges that Petitioner was also convicted of Assault with a

3  Deadly Weapon on Mr. Barbutes resulting from the November 10th attack.  (Ex. B, at 1.)

4      4.    Respondent affirmatively alleges that at the time of the murder, Petitioner was on

5  felony probation in San Francisco County for assault with a deadly weapon.  (Ex. B, at 1; Ex. C,

6  at 4.)

7      5.    Respondent affirmatively alleges that before the commitment offense, Petitioner's

8  criminal history includes arrests and convictions for petty theft, receiving stolen property,

9  burglary, battery, robbery, and assault with a deadly weapon.  (Ex. B, at 3; Ex. C, at 2 - 4.)

10  Additionally, Petitioner served a fifteen-year-to-life sentence for a 1958 second-degree murder

11  conviction, where Petitioner stabbed the victim seven times in the chest and neck without

12  provocation.  (*Id.*)  Petitioner paroled in 1968 and returned to prison and jail several more times

13  before his commitment offense in 1979.  (*Id.*)

14      6.    Respondent affirmatively alleges that Petitioner has a history of alcohol and heroin

15  abuse.  (Ex. B, at 2 - 3; Ex. D, Mental Health Evaluation at 3; Ex. E, Subsequent Parole

16  Consideration Hearing, December 1, 2005, at 21.)

17      7.    Respondent affirmatively alleges Petitioner has a history of mental health issues,

18  including depression and suicide attempts.  (Ex. B, at 3; Ex. D, at 1; Ex. E, at 22.)

19      8.    Respondent affirmatively alleges that Petitioner experiences problems with his

20  memory.  (Ex. D, at 2; Ex. E, at 28.)

21      9.    Respondent admits that the Board denied Petitioner parole on December 1, 2005.  (Ex.

22  E, at 59.)

23      10.    Respondent admits that Petitioner filed a habeas petition in San Francisco Superior

24  Court generally alleging the same causes of action that he alleges here.  Respondent further

25  admits that San Francisco Superior Court denied the petition, holding that "there is at least some

26  evidence to support the Board's denial."  (Ex. F, Superior Court Order at 6.)  The court also

27  found that "the Board's discussion of the facts is supported by the evidence that was before it . . .

28  which includes the probation officer's report . . .  indicat[ing] that Petitioner beat the victim with

a frying pan and kicked her numerous times." (*Id.*)

11. Respondent admits that the California Court of Appeal issued an August 3, 2006 denial of Petitioner's habeas corpus petition, in which he alleged the same causes of action as in this case. (Ex. G, Appellate Court Petition and Denial.)

12. Respondent admits that the California Supreme Court issued a March 21, 2007 denial of Petitioner's petition, in which he alleged the same causes of action as this case. (Ex. H, Supreme Court Petition and Denial.) Hence, Respondent admits that Petitioner has exhausted his state court remedies in regard to the issues currently before this Court. However, Respondent denies that Petitioner exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond this particular review of the December 2005 parole denial.

13. Respondent preserves the argument that Petitioner does not have a federally protected liberty interest in parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (liberty interest in conditional parole-release date created by unique structure and language of state parole statute); *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty interest in parole because serving a contemplated sentence does not create an atypical or significant hardship compared with ordinary prison life); and *In re Dannenburg*, 34 Cal. 4th 1061, 1087 (2005) (California's parole scheme is a two-step process that does not impose a mandatory duty to grant life inmates parole before a suitability finding). *Contra Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a federally protected liberty interest in parole date).

14. Respondent denies that the state courts' denials of habeas corpus relief were contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law, or that the denials were based on an unreasonable interpretation of facts in light of the evidence presented. Petitioner therefore fails to make a case for relief under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).

15. Respondent affirmatively alleges that Petitioner had an opportunity to present his case to the Board, and the Board provided him with a detailed explanation for its parole denial. (Ex.

1  E.)  Thus, Petitioner received all process due under *Greenholtz*, the only clearly established

2  federal law regarding due process rights of inmates at parole consideration hearings.

3  16.  Respondent affirmatively alleges that the Board considered all relevant and reliable

4  evidence before it, and that some evidence supports its decision.  However, Respondent further

5  affirmatively alleges that the some-evidence standard does not apply in federal habeas

6  proceedings challenging parole denials, and that the some-evidence standard is only clearly

7  established federal law in the prison *disciplinary* context.

8  17.  Respondent affirmatively alleges that the Board properly considered the gravity of

9  Petitioner's commitment offense, Petitioner's previous record of violence, his past criminal

10  history, his unstable social history, and his psychological factors, as permitted under California

11  Penal Code section 3041, subdivision (b), and California Code of Regulations, title 15, section

12  2402, subdivisions (b), (c)(1), (c)(2), (c)(3) and (c)(5).  Respondent further affirmatively alleges

13  that federal due process does not preclude the Board from relying on immutable factors to deny

14  parole.  *Sass*, 461 F.3d at 1129.

15  18.  Respondent denies that the Board improperly relied on the commitment offense, or

16  relied solely on the commitment offense.  The Board also relied on factors other than the

17  commitment offense in denying Petitioner's parole.  However, the California Supreme Court

18  held in *Dannenberg*, 34 Cal. 4th at 1094, that the Board may rely *solely* on the circumstances of

19  the commitment offense.  Respondent further affirmatively alleges that the argument that the

20  Board may not continue to rely on the circumstances of Petitioner's commitment offense to deny

21  parole is not cognizable under AEDPA because it relies on circuit court dicta in *Biggs v.*

22  *Terhune,* 334 F.3d 910 (9th Cir. 2003), rather than clearly established United States Supreme

23  Court law.

24  19.  Respondent denies that Petitioner maintains a clearly-established federal right to have

25  his criminal-defense attorney notified about his parole consideration hearing.  Petitioner

26  therefore fails to make a claim for relief under AEDPA for any alleged violation of California

27  Penal Code section 3042.  Furthermore, Respondent denies that Petitioner has a federal habeas

28  claim under California Penal Code section 3042 because mere violations of state law - assuming

1  one was made - are not cognizable under federal habeas law. *Estelle v. McGuire*, 502 U.S. 62,
2  67 (1991).

3      20.    Respondent denies that the Board considered irrelevant, unreliable, or illegal evidence
4  in Petitioner's parole consideration hearing.

5      21.    Respondent denies that the Board considered or relied on photographs not associated
6  with Petitioner's case to deny parole.  Respondent affirmatively alleges that the Board
7  recognized that the photographs it possessed did not concern Petitioner's case. (Ex. E, at 33.)
8  And the Board acknowledged that the photographs did not depict Ms. Delgado, the murder
9  victim of Petitioner's commitment offense (*id.* at 15), or the man Petitioner murdered in 1958.
10 (*Id.* at 33.)

11     22.    Respondent admits the Board denied Petitioner parole because it determined that
12 Petitioner would pose an unreasonable risk of danger to society, if released.  (*Id.* at 55.)
13 Respondent further admits the Board provided several reasons for its decision, including the
14 gravity of Petitioner's commitment offense, his previous record of violence,  his past criminal
15 conduct, his unstable social history, and his psychological evaluation.  (*Id.* at 55 - 58.)
16 Respondent denies however that the Board misapplied any California law or regulation in its use
17 or application of these factors.

18     22.    Respondent affirmatively alleges that Petitioner's claim - that the Board misapplied its
19 rules in reasons one through seven of its decision - fails under AEDPA because the state courts'
20 decisions to deny the same claim were not contrary to, and did not involve unreasonable
21 application of, clearly established United States Supreme Court law, nor were the denials based
22 on an unreasonable interpretation of facts in light of the evidence presented.

23     23.    Respondent admits the Board considered Dr. Inaba's psychological evaluation in its
24 decision.  (*Id.* at 57.)  Respondent denies however that CDCR violated either California Penal
25 Code section 3041.5 or section 3041.7 during this evaluation.  The law does not entitle Petitioner
26 to legal counsel for a psychological interview.  Furthermore, assuming CDCR violated section
27 3041.5 or section 3041.7, such violations of state law fail to constitute a cognizable claim under
28 AEDPA. *Estelle v. McGuire*, 502 U.S. at 67.

24.    Respondent affirmatively alleges that CDCR complied with all provisions of California Penal Code sections 3041.5 and 3041.7, including the requirement that Petitioner receive legal counsel *during his parole consideration hearing*.

25.    Respondent affirmatively alleges that Petitioner understood that his participation in the psychological interview with Dr. Inaba was voluntary and, prior to the interview, Petitioner denied any offer of assistance.  (Ex. D, at 1.)

26.    Respondent denies that the California Supreme Court's some-evidence test, promulgated with regard to Board parole consideration hearings, violates Petitioner's due process rights.  Furthermore, because federal law has not clearly established that the some-evidence test *violates* an inmate's due process rights, this claim fails under AEDPA.

27.    Respondent denies that the Board ignored or failed to consider evidence tending to show Petitioner's parole suitability.  (Ex. E, at 58.)

28.    Respondent admits that Petitioner's claims are timely under 28 U.S.C. § 2244(d)(1) (2000), and are not barred by any other procedural defense.

29.    Respondent denies that an evidentiary hearing is necessary in this matter.

30.    Respondent affirmatively alleges that Petitioner fails to state or establish any grounds for habeas corpus relief.

31.    Except as expressly admitted above, Respondent denies, generally and specifically, each and every allegation of the petition, and specifically denies that Petitioner's administrative, statutory, or constitutional rights have been violated in any way.

Accordingly, Respondent respectfully requests that the Court deny the Petition for writ of corpus and dismiss these proceedings.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

### I.

### THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS CLAIM WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) modified "the role of federal habeas courts in reviewing petitions filed by state prisoners by placing a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., concurring [speaking for a majority of the Court]).  Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that a state court already adjudicated on the merits *only if* the state court's adjudication was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding."  28 U.S.C. § 2254(d)(1-2).

Here, the San Francisco Superior Court decision[2/] denying Petitioner's claim for habeas relief was neither contrary to, or an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  First, Petitioner received all process required under *Greenholtz*, the only clearly established federal law specifically addressing the due process rights of inmates in a parole-consideration decision.  Second, the state court decision was not based on an unreasonable determination of the facts; rather, the evidence presented supports the state court's holding.  Thus, Petitioner fails to establish a violation of AEDPA standards, and the state court's decision denying habeas relief

---

2.  When, as here, the California Supreme Court denies a petition for review without comment, the federal court will look to the last reasoned decision as the bases for the state court's judgment.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).  In this case, the San Francisco Superior Court rendered the last reasoned decision.

1   must stand.

2

3   **A.    The San Francisco Superior Court Decision Was Not Contrary to**
        **Clearly Established Federal Law.**

4

5         Under the first AEDPA standard, a federal court may grant habeas relief if the state court

6   decision was contrary to, or an unreasonable interpretation of, clearly established federal law as

7   determined by the Supreme Court of the United States.  Here, Petitioner received all process due

8   under *Greenholtz*, the only clearly established federal law regarding the due process rights of

9   inmate at a parole-consideration hearing.

10

11  **1.    Petitioner received all process due under the only United States**
            **Supreme Court law addressing due process in the parole context.**

12        In *Greenholtz*, the United States Supreme Court established the due process protections

13  required in a state parole system.  The Court held that the only process due at a parole

14  consideration hearing is an opportunity for the inmate to present his case, and an explanation for

15  a parole denial.  *Greenholtz*, 442 U.S. at 16.  Petitioner's claim fails because he received both of

16  these protections at his December 2005 hearing.

17        First, Petitioner fully presented his case to the Board.  (Ex E, generally; *see also* Ex. E, at 6-

18  7 [Board explaining Petitioner's rights, including his right to be heard].)  Petitioner discussed his

19  commitment offense (*id.* at 13-18), his feelings regarding the murder (*id.* at 24), his social history

20  (*id.* at 18, 20-23), his criminal background, including his previous second-degree murder

21  conviction (*id.* at 19-20), his plans for the future (*id.* at 30-32), his institutional behavior (*id.* at

22  51), his age (*id.*), and his employment, educational, and vocational activity while incarcerated

23  (*id.* at 36-39, 48-54).  Petitioner and his attorney both delivered a closing statement outlining the

24  reasons why the Board should grant parole.  (*Id.* at 49-54.)

25        Second, Petitioner received a thorough explanation as to why the Board denied parole.  (*Id.*

26  at 55-59.)  The Board explained that the commitment offense was carried out in an especially

27  cruel manner in that Petitioner beat the victim, Linda Delgado, with a frying pan, kicked her, and

28  attempted to choke her.  (*Id.* at 55.)  Also, the Board elaborated that the killing demonstrated a

callous disregard for human suffering since Ms. Delgado certainly experienced great trauma as a result of the beating. (*Id*. at 55-56.) And Petitioner also struck Mr. Barbutes with a glass bottle during the attack. (*Id.*) The Board further explained that the motive for the crime, jealousy, was trivial in relation to the offense. (*Id.*) The Board noted that Petitioner's criminal record demonstrates an escalating pattern of criminal and violent conduct, and an inability to profit from society's previous attempts to correct his behavior. (*Id.* at 57.) The Board commented that Petitioner's unstable social history includes several years of abusing illegal narcotics and alcohol, as well as arrests for petty theft, assault with a deadly weapon, burglary, robbery, and a prior second-degree murder conviction. (*Id.*) Lastly, the Board cited Dr. Inaba's mental health evaluation of Petitioner, which states, "it should not be assumed that Mr. Ybarra would be incapable of violent actions where he felt there was sufficient justification, or provocation, or where his mental capacity was compromised. Any return to the use of alcohol or drugs would further increase this risk." (*Id.* at 57-58; Ex. D at 5.) The Board recognized Petitioner's marketable skills and commended him for his many achievements while incarcerated; however, it found that Petitioner poses an unreasonable risk of danger to society if released. (Ex. E, at 55, 58.)

Therefore, Petitioner presented his case to the Board and received an explanation as to why the Board denied him parole. Because Petitioner received all process due under *Greenholtz*, the state court's adjudication of his habeas claim did not violate clearly established Supreme Court precedent. Accordingly, Petitioner's claim fails under AEDPA.

**2.    The Ninth Circuit's some-evidence test is not clearly established federal law and, therefore, Petitioner is only entitled to the process established in *Greenholtz* - not some-evidence federal review.**

Petitioner contends that a reviewing court, in conducting a habeas inquiry into a Board's denial of parole, will not re-weigh the evidence de novo, but only look to see if there is some evidence to support the Board's decision. (Petn. at 47.) Petitioner is correct *only* with respect to a California court's review of a parole denial. *In re Rosenkrantz*, 29 Cal. 4th 616, 658 (2002). However, the some-evidence standard should not apply to a federal habeas proceeding challenging a parole denial.

1    The United States Supreme Court recently reiterated that for AEDPA purposes, "clearly

2    established federal law" refers only to the holdings of the nation's highest court on the specific

3    issue presented.  *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653 (2006).   In *Musladin*, the

4    Ninth Circuit held that under clearly established federal law, courtroom spectators who wore

5    buttons depicting the victim in a murder trial inherently prejudiced the defendant and denied him

6    a fair trial.  *Id.* at 652.  In vacating the Ninth Circuit's decision, the Supreme Court explained

7    that the two Supreme Court cases that the Ninth Circuit relied on - one involving a defendant

8    who was required to wear prison clothing during trial and the other concerning a defendant who

9    had four uniformed troopers placed behind him at trial - involved state-sponsored courtroom

10    practices that were unlike the private conduct of the victim's family.  *Id.* at 653-54.  As a result,

11    the Court held that "given the lack of applicable holdings from [the Supreme Court], it could not

12    be said that the state court 'unreasonably appl[ied] . . . clearly established Federal law.'"  *Id.* at

13    653-54.

14    Similarly, the Supreme Court found in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933,

15    1942 (2007) that a federal habeas petitioner maintained no claim under AEDPA because

16    Supreme Court precedent finding ineffective assistance of counsel when an attorney fails to

17    adequately  investigate mitigating evidence is factually distinct from a defense-attorney failing to

18    investigate mitigating evidence after the client demonstrates a reluctance to assist the

19    investigation, as were the facts in *Schriro*.  Consequently, the Supreme Court has clearly

20    indicated that circuit courts may not import - under the guise of "clearly established federal law"

21    - a federal standard used in one context for a different factual circumstance.  *See e.g. id.*;

22    *Musladin,* 127 S. Ct. at 653 - 654.[3/]

23

24    3. Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases.  *See
e.g.*, *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007) (affirming district court's denial of

25    habeas claim alleging ineffective assistance of appellate counsel based on an alleged conflict of
interest because the Supreme Court has never held - even though Ninth Circuit has - that such an

26    irreconcilable conflict violates the Sixth Amendment); *Nguyen v. Garcia*, 477 F.3d 716 (9th Cir.

27    2007) (holding that because the Supreme Court had not extended a defendant's right to counsel to
a competency hearing, federal law was not clearly established for AEDPA purposes); and *Locke v.

28    Cattel*, 476 F.3d 46 (9th Cir. 2007) (affirming denial of habeas claim under AEDPA based on lack
of  Supreme  Court  jurisprudence  supporting  argument  that  suspect's  admission  to  a  crime

1    Despite the Supreme Court's guidance in this area, the Ninth Circuit continues to extend the

2    *Hill* some-evidence standard of review - a Supreme Court holding applicable to prison

3    disciplinary hearings - to habeas petitions challenging denials of parole.  *Sass v. Cal. Bd. of*

4    *Prison Terms*, 461 F.3d 1123 (9th Cir. 2006) (referencing *Superintendent v. Hill*, 472 U.S. 445,

5    (1985) for proposition that Board's denial of parole requires some-evidence); *Irons v. Carey*, __

6    F.3d __, 2007 WL 2027359 (9th Cir. July 13, 2007).

7    Furthermore, *Greenholtz*, the only Supreme Court decision concerning the due process

8    rights of an inmate in the parole context, specifically recognized the procedural distinction

9    between when the government denies an inmate parole and when the government determines

10   guilt by way of an adversarial proceeding.  *Greenholtz*, 442 U.S. at 15-16.  Based on this

11   distinction, the Supreme Court determined that a denial of parole only requires the state to

12   provide an opportunity for the inmate to present his case and an explanation for the parole denial

13   - not additional protections, such as those required in a disciplinary proceeding.  *Id.* (reasoning

14   that "to require the parole authority to provide a summary of the evidence would convert the

15   [parole-consideration] process into an adversary proceeding and to equate the Board's parole

16   release determination with a guilt determination").

17   As a result, for AEDPA purposes, the *Hill* some-evidence standard of review required for

18   prison *disciplinary* hearings should not apply to a federal-habeas-proceeding challenging a

19   parole denial.  However, Respondent recognizes that the Ninth Circuit has held otherwise, most

20   recently in *Irons v. Carey*, 2007 WL 2027359, and will argue this case accordingly.

21

22          **3.  Even if the some-evidence standard were clearly established federal**
             **law, this standard was correctly applied by the San Francisco Superior**
23          **Court.**

24   Assuming the some-evidence test is clearly established Supreme Court law for parole

25   denials, Petitioner's claim fails under AEDPA because the state court's decision was not

26   contrary to, and did not involve an unreasonable application of, the some-evidence requirement.

27   California law requires that some evidence support the Board's decision to deny parole.

28

transformed police interview into a custodial interrogation).

1  *Rosenkrantz*, 29 Cal. 4th 616, 658 (2002).  And the San Francisco Superior Court applied this

2  some-evidence requirement in reviewing the Board's 2005 decision denying parole.  (Ex. F, at

3  6.)  As a result, the state court's decision was not contrary to federal law, because both state and

4  federal law require some-evidence to support the Board's decision.

5          Additionally, the San Francisco Superior Court decision was not "an unreasonable

6  application of" the some-evidence standard of review.  The some-evidence standard "does not

7  require examination of the entire record, independent assessment of the credibility of the

8  witnesses, or weighing of the evidence;" rather, it is satisfied if there is "any evidence in the

9  record that could support the conclusion reached by the [B]oard."  *Hill*, 472 U.S. at 455-57; *see*

10 *also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some evidence standard is minimal.")

11         Here, the San Francisco Superior Court properly applied the law and reasonably determined

12 that some-evidence supported the Board's decision that Petitioner posed an unreasonable risk of

13 danger to society if released.  (Ex. F, at 6.)  The state court noted that the Board's decision is

14 supported not only by the facts of the crime, where Petitioner beat the victim with a frying pan

15 and kicked her numerous times, but also by "Petitioner's past conduct, including drug and

16 alcohol use, numerous arrests, and another killing of an unarmed individual."  (*Id.* at 6-7.)  As a

17 result, Petitioner's claim fails under AEDPA because the San Francisco Superior Court decision

18 was not contrary to, or an unreasonable application of, the some-evidence test.

19         **4.    The Board may rely on static factors to deny parole.**

20         Petitioner also argues that due process precludes the Board from relying on static

21 factors—namely, the circumstances of the commitment offense, his significant criminal record,

22 and his past drug and alcohol abuse— to deny parole.  (Petn., at 62-65.)  However, his argument

23 fails for a number of reasons.

24         First, there exists no "clearly established federal law" that prohibits the Board's ability to

25 rely on static factors to deny parole.  The Ninth Circuit has stated in dicta that the Board's

26 continued reliance on *one* unchanging factor to deny parole "could result in a due process

27 violation."  *Biggs v. Terhune,* 334 F.3d 910, 917 (9th Cir. 2003).  However, the *Biggs* court did

28 not definitively indicate that reliance on an unchanging factor necessarily violates due process,

only that it possibly could.  *Id.*  In *Biggs*, the court praised Biggs for being "a model inmate," and found that the record was "replete with the gains Biggs has made," including a master's degree in business administration.  *Id.* at 912.  Nonetheless, the court denied habeas relief because the Board's decision to deny parole - which relied solely on the commitment offense - was supported by some evidence.

Although the Ninth Circuit recently revisited this issue again in *Irons* dicta, it held there that despite "substantial" evidence of the inmate's rehabilitation in the case, the Board acted properly within its discretion in continuing to rely on the circumstances of the inmate's offense to deny parole.  *Irons v. Carey*, __ F.3d __, 2007 WL 2027359 (9th Cir. July 13, 2007).  Accordingly, the Ninth Circuit has never held that a Board's reliance on a static factor to deny parole violates due process.  Clearly, a Board's mere use of static *factors* is not contrary to clearly established United States Supreme Court jurisprudence.

Second, California Penal Code section 3041, subdivision (b), requires that the Board examine the commitment offense, as the Board "shall set a release date unless it determines that the gravity of the current offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration."  Indeed, the California Supreme Court held in *Dannenberg*, 34 Cal. 4th at 1094, that the Board may rely *solely* on the circumstances of the commitment offense.

Also in California, the Board is directed to examine immutable factors other than the commitment offense, such as the inmate's social history, past mental state, past criminal history, and other relevant information.  Cal. Code Regs., tit. 15, § 2402(b).  Therefore, California law not only permits the Board's reliance on static factors, it also requires the Board to examine such factors.

Third, the Board had to determine if Petitioner Ybarra "*will pose* an unreasonable risk of danger to society *if released from prison*."  Cal. Code of Regs., tit. 15, § 2402, subd. (a)(emphasis added).  In Petitioner's case, he was paroled for a second-degree murder conviction once before.  (Ex. C, at 3.)  Thus, despite his lack of illegal activity while incarcerated, Petitioner has demonstrated a predisposition for violence when released from the ordinary dictates of

1  prison-life.  As a result, the Board appropriately evaluated the risk Petitioner would pose to

2  society *if released* from prison by incorporating in its decision the behavior Petitioner exhibited

3  during his time in free society.  Indeed, the Board would have been derelict in its duty had it not

4  evaluated those static factors that are relevant to Petitioner's behavior in an unregulated

5  environment.

6       Lastly, the Board relied on factors other than Petitioner's two second-degree murder

7  convictions, his extensive criminal history, and his alcohol and drug abuse.  (Ex. E, at 55-57.)

8  The Board's determination also incorporated Dr. Inaba's recent mental health evaluation of

9  Petitioner, which provided the Board recent evidentiary support favoring denial.  (*Id.* at 57-58;

10  ex. D, at 5.)

11      Consequently, Petitioner's argument that the Board violated his due process rights by using

12  static factors to support the parole denial is without merit.  Neither federal law, California law,

13  nor common sense dictates that the Board cannot examine these types of criteria.

14      **5.    The Board did not misapply California law in its decision denying parole.**

15      First, assuming the Board misapplied California law, mere violations of state law are not

16  cognizable under federal habeas law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Furthermore,

17  at most, "clearly established federal law" requires some evidence to support the Board's

18  decision.  *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006).  And because some

19  evidence clearly supports the Board's decision, Petitioner's argument fails under AEDPA.  (*See*

20  *supra* Part A.2.)

21      Secondly, the Board correctly applied California law.  California law instructs the Board to

22  "set a release date unless it determines that the gravity of the current offense or offenses, is such

23  that consideration of the public safety requires a more lengthy period of incarceration."  Cal.

24  Penal Code § 3041, subd. (b).  Furthermore, the law instructs that "all relevant, reliable

25  information available to the panel shall be considered in determining [the inmate's] suitability

26  for parole."  Cal. Code Regs., tit. 15, § 2042.

27      Here, the Board properly considered the gravity of Petitioner's commitment offense,

28  Petitioner's previous record of violence, his past criminal history, his unstable social history, and

1    his psychological factors.  (Ex. E.)  Furthermore, the Board recognized Petitioner's marketable

2    skills and many achievements while incarcerated.  (*Id.* at 55, 58.)  Accordingly, the Board

3    considered the relevant information.  And, as stated above, neither the Board's decision nor the

4    San Francisco Superior Court's decision violates clearly established federal.  Therefore,

5    Petitioner fails to demonstrate a basis for relief under the first AEDPA standard.

6

7        **B.    The San Francisco Superior Court Decision Upholding the Board's Parole Denial**
         **Reasonably Determined the Facts.**

8

9        Under the second AEDPA standard, a federal court may grant habeas relief if the state court

10   decision was based on an unreasonable determination of the facts in light of the evidence

11   presented at the State Court proceeding."  28 U.S.C. § 2254(d)(2).  AEDPA also requires federal

12   habeas courts to presume the correctness of state courts' factual findings unless petitioners rebut

13   this presumption with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

14       Here, the San Francisco Superior Court properly determined that "the Board's discussion of

15   the facts is supported by the evidence that was before it . . . which includes the probation

16   officer's report." (Ex. F, at 6.)  Indeed, the Probation Officer's Report describes the facts

17   surrounding Petitioner's commitment offense, his previous violent crimes, and his drug offenses.

18   (Ex. C.)  Furthermore, the factual determination was not unreasonable considering the other

19   evidence presented to the state court, such as the parole-consideration transcript, the life-prisoner

20   report, and the mental health evaluation.  (Ex. B, ex. E, ex. D.)  As a result, the state court

21   decision was not an unreasonable determination of the facts presented.

22       In addition, Petitioner fails to provide clear and convincing evidence to the contrary.

23   Petitioner's unsubstantiated challenges to the facts of the murder, especially considering his self-

24   confessed memory problems, are insufficient to rebut the presumption that the state court's

25   findings are correct.  Therefore, the petition is also without merit with regard to the second

26   AEDPA standard.

27   / / /

28   / / /

1

## **CONCLUSION**

2    Petitioner Ybarra fails to demonstrate a basis for relief under AEDPA's two standards

3 permitting a habeas remedy after a state court has already adjudicated the same issue.  Under the

4 first standard, the San Francisco Superior Court's adjudication of Petitioner claim was not

5 contrary to, or an unreasonable application of, clearly established federal law, as determined by

6 the Supreme Court of the United States.  Petitioner received all process entitled under

7 *Greenholtz*, and - although not clearly established federal law - the some-evidence test was

8 nonetheless applied by the state court.  Under the second AEDPA standard, Petitioner fails to

9 show that the San Francisco Superior Court decision was based on an unreasonable

10 determination of the facts.  Rather, the probation officer's report, as well as several other

11 documents, support the state court's factual interpretation.

12    Dated:  October 11, 2007

13                                 Respectfully submitted,

14                                 EDMUND G. BROWN JR.
                                   Attorney General of the State of California

15                                 DANE R. GILLETTE
                                   Chief Assistant Attorney General
16
                                   JULIE L. GARLAND
17                                 Senior Assistant Attorney General

18                                 ANYA M. BINSACCA
                                   Supervising Deputy Attorney General

19

20
                                    /S/  BRIAN C. KINNEY
21                                 BRIAN C. KINNEY
                                   Deputy Attorney General
22
                                   Attorneys for Respondent
23
    Ibarra v Ayersfinal.wpd
24  SF2007200498

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................. 1

ANSWER TO THE ORDER TO SHOW CAUSE ................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 8

ARGUMENT ........................................................................................ 8

    I.    THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS
        CLAIM WAS NEITHER CONTRARY TO, OR AN
        UNREASONABLE APPLICATION OF, CLEARLY
        ESTABLISHED FEDERAL LAW, NOR BASED ON AN
        UNREASONABLE DETERMINATION OF THE FACTS. ................ 8

        A.    The San Francisco Superior Court Decision Was Not
            Contrary to Clearly Established Federal Law. ..................... 9

            1.    Petitioner received all process due under the only
                  United States Supreme Court law addressing due
                  process in the parole context. ................................... 9

            2.    The Ninth Circuit's some-evidence test is not
                  clearly established federal law and, therefore,
                  Petitioner is only entitled to the process
                  established in *Greenholtz* - not some-evidence
                  federal review. .................................................. 10

            3.    Even if the some-evidence standard were clearly
                  established federal law, this standard was
                  correctly applied by the San Francisco Superior
                  Court. .............................................................. 12

            4.    The Board may rely on static factors to deny
                  parole. .............................................................. 13

            5.    The Board did not misapply California law in its
                  decision denying parole. ...................................... 15

        B.    The San Francisco Superior Court Decision Upholding the
            Board's Parole Denial Reasonably Determined the Facts. ...... 16

CONCLUSION .................................................................................... 17

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4  Biggs v. Terhune
   334 F.3d 910 (9th Cir. 2003)                                      5, 13
5

6  *Carey v. Musladin*
   __ U.S. __, 127 S. Ct. 649, 653 (2006)                              11
7

8  *Estelle v. McGuire*
   502 U.S. 62, 67 (1991)                                            6, 15
9

10 *Foote v. Del Papa*
   492 F.3d 1026, 1029 (9th Cir. 2007)                                 11

11 *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
   442 U.S. 1, 12 (1979)                                  4, 8-10, 12, 17
12

13 *In re Dannenburg*
   34 Cal. 4th 1061, 1087 (2005)                                   4, 5, 14
14

15 *In re Rosenkrantz*
   29 Cal. 4th 616, 658 (2002)                                       10, 12
16

17 *Irons v. Carey*
   __ F.3d __, 2007 WL 2027359 (9th Cir. July 13, 2007)               12, 14

18 *Locke v. Cattel*
   476 F.3d 46 (9th Cir. 2007)                                         11
19

20 *Nguyen v. Garcia*
   477 F.3d 716 (9th Cir. 2007)                                        11
21

22 *Sandin v. Connor*
   515 U.S. 472, 484 (1995)                                             4
23

24 *Sass v. Cal. Bd. of Prison Terms*
   461 F.3d 1123 (9th Cir. 2006)                                4, 5, 12, 13
25

26 *Schriro v. Landrigan*
   __ U.S. __, 127 S. Ct. 1933, 1942 (2007)                            11

27 *Superintendent v. Hill*
   472 U.S. 445, (1985)                                             12, 13
28

**TABLE OF AUTHORITIES  (continued)**

Page

*Williams v. Taylor*
529 U.S. 362, 412 (2000)                                                                       8

*Ylst v. Nunnemaker*
501 U.S. 797, 803-04 (1991)                                                                  8


**Statutes**
28 United States Code
        § 2244(d)(1) (2000)                                                                     7
        § 2254(d)(1-2)                                                                              8
        § 2254(d)(2)                                                                                16
        § 2254(e)(1)                                                                                16

California Code of Regulations, Title 15
        § 2042                                                                                         15
        § 2402, subdivision (a)                                                                14
        § 2402, subdivision (b)                                                              5, 14
        § 2402, subdivision (c)(1)                                                             5
        § 2402, subdivision (c)(2)                                                             5
        § 2402, subdivision (c)(3)                                                             5
        § 2402, subdivision (c)(5)                                                             5

California Penal Code
        § 3041.5                                                                                        6
        § 3041.7                                                                                        6
        § 3041, subdivision (b)                                                             5, 14, 15
        § 3042                                                                                           5


**Other Authorities**
The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)        8-13, 15-17

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Ybarra v. Ayers**

No.:    **C07-2802 MMC**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **October 11, 2007,** I served the attached

**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS
AND AUTHORITIES**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004, addressed as follows:

Jose Ybarra
C-18150
San Quentin State Prison
1 Main Street
San Quentin, CA 94964

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **October 11, 2007,** at San Francisco, California.

|  |  |
|---|---|
| R. Panganiban | |
| Declarant | Signature |

20108438.wpd