# EXHIBIT B

# EXHIBIT B

LIFE PRISONER EVALUATION
SUBSEQUENT PAROLE CONSIDERATION HEARING
NOVEMBER 2005 CALENDAR

YBARRA, JOSE                                                                                                      C18150

I.   **COMMITMENT FACTORS:**

A.   Life Crime:

Ybarra was convicted of Murder, Second Degree, PC 187, with use of a Deadly Weapon, PC 12022 (b), Case Number 101295 in San Francisco County. He was sentenced to 15 years to Life with a five-year enhancement for use of a weapon. His Minimum Eligible Parole Date (MEPD) is 07/01/91. The victim was Linda Delgado, age 49.

1.   Summary of Crime

On 11/10/79, Ybarra entered the premises of John Barbutes and immediately began punching Mr. Barbutes, a paraplegic, about the face and head. He then obtained a frying pan from the kitchen and beat Ms. Delgado with the frying pan to the point of unconsciousness, then began kicking her and at one point tried to choke her. When Mr. Barbutes tried to give Ms. Delgado some assistance, Ybarra struck Mr. Barbutes in the head with a glass bottle, and then fled on foot. Ms. Delgado was hospitalized and died three days later from the injuries caused by Ybarra. Mr. Barbutes was also hospitalized but he recovered from his injuries. Mr. Barbutes testified at the trial that Ybarra had told him two days earlier that he would kill Ms. Delgado. Ybarra was not arrested until 11-15-79. While Mr. Barbutes was in the hospital, Ybarra threatened him with bodily harm should he testify. Ybarra had a long-term relationship with Ms. Delgado, but she was living with Mr. Barbutes at the time of the murder.

2.   Prisoner's Version

Ybarra admits guilt in the instant offense. He states he is very remorseful of the act, indicating it was a crime of passion. He states "My crime began the day that I caught my common-law wife with another man in the act. I lost my head and made a terrible mistake, which I regret very much. I was very much in love with my common-law wife. She was my whole life. I am sorry for that terrible mistake which I will carry in my conscious for the rest of my life. All I can do now is pray to God and ask for forgiveness.

B.   Aggravating/Mitigating Circumstances:

1.   Aggravating Factors

a)   During the commission of the crime, Ybarra had a clear opportunity to cease instead continued.
b)   Ybarra engaged in other reliably documented criminal conduct, which was an integral part of the crime for which he is currently committed. He was found guilty of Assault with a Deadly Weapon on a second victim, John Barbutes.
c)   Ybarra had a special relationship of trust with the victim. Ms. Delgado was his long-term common-law wife.
d)   The manner in which the crime was committed created a potential for serious injury to persons other than the victim of the crime. He was, in fact, also convicted of assaulting Mr. Barbutes who attempted to assist the murder victim.
e)   At the time the crime was committed, Ybarra was on felony probation in San Francisco County for Assault with a Deadly Weapon.

      f) There were multiple victims for which the term is not being enhanced. Ybarra was convicted of Assault with a Deadly Weapon on Mr. Barbutes, but the three-year sentences were stayed pending completion of the Life term.
      g) Ybarra threatened Mr. Barbutes with bodily harm shortly after the crime in an attempt to prevent him from testifying.
      h) Ybarra has an extensive criminal history dating back to 1953 and includes prior state prison terms for Robbery, Possession of Controlled Substance, and Second Degree Murder where he stabbed a victim seven times in the chest without provocation.

    2. **Mitigating Factors:**

    None.

II. **PRE-CONVICTION FACTORS:**

    A. **Juvenile Record:**

    There is no information on Ybarra's juvenile record.

    B. **Adult Conviction and Arrests:**

    Ybarra has an extensive adult criminal record dating from 1953 that includes arrests and convictions for petty theft, burglary, battery, robbery, murder, receiving stolen property, possession of controlled substance, and assault with a deadly weapon. He has served three state prison terms including a robbery conviction in 1954, paroled 1956 and was returned to prison on one occasion for a parole violation. He also served a 15 to Life term in 1958 for second-degree murder for stabbing a victim seven times in the chest and neck without provocation, was paroled in 1968, and returned to prison in 1970 for a parole violation and returned to parole in 1971. He also served a prison term for possession of barbiturates in 1973, paroled in 1977 and discharged from parole in 1979.

    C. **Personal Factors:**

    Ybarra is 63 years old and was born in Harlingen, Texas to Sylvano and Josephine Ybarra. His parents were divorced when he was young and Ybarra was raised by his mother until he was 12 years old. He left home at age 12 and lived with various families while he worked in the fields to support himself. At age 17 he came to live with an older brother in San Francisco. Since that time he has lived in San Francisco when he has not been incarcerated. He claims to have quit school at age 10. He is an unskilled laborer with a sporadic employment history. His past employment consists of farm labor, kitchen work, railroad worker, construction labor, shipyard labor, and steelworker. He was unemployed at the time of his conviction and was receiving SSI benefits for mental disability. He claims two common-law wives but no children. He separated from the first in 1960 and the second is the victim of this offense. He admits to being an alcoholic and drug addict. He had no known history of medical problems. He claims a history of depression and past suicide attempts. There is no evaluation of his mental health status prior to his conviction. There are no instances of sexual deviation noted.

III. **POST-CONVICTION FACTORS:**

    A. **Special Accommodations/Disability:**

    Ybarra stated that no accommodations were necessary for the purpose of effective communication per the Armstrong Remedial Plan.

YBARRA, JOSE      C18150      CSP-SQ  SUB.      NOVEMBER 2005

B.  **Custody History:**

Ybarra was received in the Department of Corrections from San Francisco County on 6/24/80 to the Reception Center at the California Training Facility (CTF). He was subsequently transferred to San Quentin State Prison (SQSP) on 1/22/81 due to his lifer term. He was assigned to school and a pre release porter with Close B custody. On 9/15/83, Ybarra appeared before the Unit Classification Committee (UCC) for a program review for Category 'T' placement at the California Medical Facility (CMF) based upon a CDC 128-C chrono dated 9/16/83 by Dr. Ronald Bruce, staff psychologist at SQSP stating that he feels that Ybarra has experienced a lengthy history of depression and has attempted suicide on three different occasions. He has also used narcotics several times since the age of thirty. UCC acted to reduce his custody to Medium A and refer his case to the Classification Services Representative (CSR) for transfer consideration. On 12/12/83, he appeared before the UCC for his initial review after his transfer to CTF-C on 11/30/84. UCC acted to place him on the academics waiting list. He was subsequently transferred to CTF-N on 3/13/85 for appropriate level III placement. On 5/1/86 Ybarra appeared before the UCC for his post board review after his 4/22/86 Documentation Hearing. The Board of Prison Terms (BPT) recommended that he continues his positive attitude in academics and attends group therapy programs. On 10/6/88, he appeared before the UCC for his annual review. UCC acted to refer his case to the CSR for transfer consideration for family ties. He was subsequently transferred to Solano (CMF-S) on 11/28/88 and place in the Food Services department. On 11/28/88 Ybarra appeared before the UCC for a post board review after his 7/28/89 Initial Parole Consideration Hearing. The BPT denied his parole for two years. He appeared for his post board review on 6/10/93 after his 10/26/92 Parole Consideration Hearing. The BPT denied his parole for another two years and UCC acted to refer his case to the CSR for transfer consideration for level II placement due to his lifer status. On 8/4/93, Ybarra appeared before the UCC for his initial review after his transfer to SQSP on 7/12/93. UCC acted to place him in PIA with Medium A custody. On 11/2/94 he appeared before the UCC for his post board review after his 10/18/94 hearing. Parole was denied one year. Since 1995, Ybarra has appeared for his annual and post board reviews and requested to continue his present program. He is currently assigned to the Prison Industries Authorities. He continues to attend the Alcoholics Anonymous and religious classes. All of his transfers were non-adverse in nature.

C.  **Therapy & Self-Help Activities:**

Chrono's:  Alcoholics Anonymous: 3/27/86, 3/7/87, 6/30/87, 10/13/87, 3/14/88, 7/14/88, 10/15/88, 6/28/89, 9/29/89, 12/31/89, 12/31/90, 3/31/91, 6/30/91, 9/30/91, 12/31/91, 3/31/92, 3/31/93, 7/1/93, 4/18/94, 7/15/84, 11/3/94, 2/15/95, 6/2/95, 11/8/95, 1/23/96, 5/9/96, 7/25/96, 10/11/96, 12/30/96, 4/8/97, 10/15/98, 1/15/99, 4/15/99, 7/15/99, 10/7/99, 3/31/00, 7/10/00, 10/6/00, 1/18/01, 4/17/01, 7/5/01, 10/3/01, 1/7/02, 4/5/02, 10/4/02, 12/26/02, 1/9/03, 4/15/03, 7/7/03, 10/1/03, 12/29/03, 3/29/04, 6/21/04, 9/30/04, 12/31/04, 3/31/05, 6/30/05, 9/30/05.
Manalive: 9/24/96.
Theology Class: 12/1/03.
Laudatory: 12/24/03 and 1/24/05 as a member of the San Quentin Hobby Shop, 3/3/03 for his participation in the GED class for three years, 1/2/02 participated in San Quentin Toy Drive, 11/13/01 he donated handcraft items to the American Red Cross. 10/3/05 chrono for his participation in the San Quentin Hurricane Relief Fund.
Arts in Corrections: 3/2/05 participant in the " Art From the Community" exhibit, 3/9/05 he had art displayed at the Sonoma State Art Show.

YBARRA, JOSE           C18150           CSP-SQ    SUB.           NOVEMBER 2005

|  |  |  |
|---|---|---|
| Certificates: | 11/4/03 | Upholstery Training Program |
|  | 9/1/01 | Aboriginal View |
|  | 9/10/01 | Indiana Chair Frame Company |
|  | 10/23/00 | Indiana Chair Frame Company |
|  | 1/12/00 | Indiana Chair Frame Company |
|  | 11/9/99 | Indiana Chair Frame Company |
|  | 3/21/99 | Vocational Dry Cleaning, Orientation |
|  | 9/16/99 | Vocational Dry Cleaning, Shop and Site Safety |
|  | 8/26/98 | Life and Job Skills |
|  | 9/24/96 | Manalive |

D. **Disciplinary History:**

| CDC 115'S | Ybarra has remained disciplinary free throughout his incarceration. |
|---|---|
| CDC 128'S | 5/8/84    Absent from Education Assignment. |
|  | 7/13/84   Absent from Education Assignment |
|  | 12/24/84  Absent from Education Assignment |
|  | 11/19/96  Altered Appliances |

IV. **FUTURE PLANS:**

A. **Residence:**

Ybarra had made contact with the Center force Program, 2955 Kerner Blvd 2nd floor, San Rafael, CA 94901, (415) 456-9980x 115, who has made arrangements with him to assist with housing and employment upon parole. Alternate plans to establish residency with Fred Carty, a personal friend, at 742 w. Francisco Blvd., San Rafael, CA 94901 have been made. Ybarra previous plans of residency are also still available: Victory Outreach Church, 467 Van Ness Avenue, San Francisco, CA 94103, (415) 648-7000. Additionally, Ybarra indicates he has an offer to live with a friend, Frank Gonzales, 1105 Post Street #307, San Francisco, CA 94109, (415) 922-6679.

B. **Employment:**

He offers skills in auto body repair, upholstery, short order cooking and construction and will seek employment in one of these fields.

V. **USINS STATUS:**

Not applicable.

VI. **SUMMARY:**

A. Ybarra continues to attend the Alcoholics Anonymous classes as recommended by the BPT. He is also attending spiritual classes at the Catholic chapel. He has remained disciplinary free throughout his incarceration and he is continuing to maintain a very positive program. He states that he has accepted the responsibility for the crime that he committed and just wants to do his time without any problems.

B. This report is based upon a two-hour review of his central file and a one-hour interview with Ybarra. He was afforded the opportunity to review his central file on 10/18/05 and he denied the opportunity.

_[signature]_
B. EBERT
Correctional Counselor I (A)

_[signature]_
V. KELLEY
Correctional Counselor II

_[signature]_
C. BELLSHAW
Correctional Counselor III C&PR

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- ☐ DOCUMENTATION HEARING
- ☒ PAROLE CONSIDERATION HEARING
- ☐ PROGRESS HEARING

**INSTRUCTIONS**
TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| YEAR | POSTCONVICTION CREDIT BPT | PBR | REASONS |
|---|---|---|---|
| 2/10/03 TO 2/9/04 | | | Placement: San Quentin II, general population.<br><br>Custody/Classification: Medium A, he appeared before the UCC for his post board review on 4/3/03, parole was denied one year. He appeared for his annual review on 8/21/03, UCC acted to continue his present program.<br><br>Academics: None.<br><br>Work Record: Remains assigned to the PIA with average work supervisor reports noted.<br><br>Group Activities: Ybarra continues to attend Alcoholics Anonymous classes. He received the following chronos dated 4/15/03, 7/7/03, 10/1/03, 12/29/03<br><br>Psychiatric Treatment: Received a Psychiatric Evaluation on 2/11/03. Report in Central File dated 2/25/03.<br><br>Prisoner Behavior: Excellent he has remained disciplinary free this period<br><br>Other: Ybarra received laudatory chronos dated 3/3/03 for his attendance in the GED class as an excellent student and 12/1/03 for his participation in the religious classes. |
| 2/10/04 TO 2/9/05 | | | Placement: remained at San Quentin II, general population.<br><br>Custody/Classification: Medium A.<br><br>Academics: None.<br><br>Work Record: Remains assigned to the PIA with average work supervisor reports noted.<br><br>Group Activities: None.<br><br>Psychiatric Treatment: None.<br><br>Prisoner Behavior: Excellent he remained disciplinary free this period. |

CORRECTIONAL COUNSELOR SIGNATURE: *[signature]*   DATE: 10/24/05

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| YBARRA, JOSE | C18150 | CSP-SQ | SUB, NOVEMBER 2005 | |

BPT 1004 (REV.7/86)   PAGE 1 OF 2

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 2/9/05 TO Present | | | Placement: San Quentin II, general population<br><br>Custody/Classification: Medium A, 19 points. He appeared before UCC for his Post Board on 7/29/04. Parole was denied for one year. He appeared before UCC for his Annual Review on 8/5/04, UCC acted to continue current program.<br><br>Academics: None<br><br>Work Record: Remains assigned to PIA with satisfactory work supervisor reports noted.<br><br>Group Activities: Ybarra continued his participation in the Alcoholic Anonymous classes. He received the following chronos dated 6/21/04, 9/30/04, 12/31/04, 3/31/05, and 6/30/05. He participated in the Arts in Corrections program with chronos dated 3/2/05 and 3/9/05. Ybarra received a chrono dated 1/24/05 for his participation in the Hobby Shop Toy Program. He participated in the Upholstery Training Program dated 11/4/04, Vietnam Veteran's Group 12/4/04, and the San Quentin Hurricane Relief Fund chrono dated 10/3/05.<br><br>Psychiatric Treatment: None<br><br>Prisoner Behavior: Excellent, he has remained disciplinary free for this period.<br><br>Other: None |

**ORDER:**
☐ BPT date advanced by _____ months.    ☐ BPT date affirmed without change.
☐ PBR date advanced by _____ months.    ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**
☐ Previously imposed conditions affirmed.
☐ Add or modify _____

☐ Schedule for Progress hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| YBARRA, JOSE | C18150 | CSP-SQ | SUB, NOVEMBER 2005 | |

BPT 1004 (REV.7/86)                    PAGE 2 OF 2