# EXHIBIT F

ENDORSED
FILED
San Francisco County Superior Court

JUN 2 0 2006

GORDON PARK-LI, Clerk
BY: ___CARLOS BARRAZA___
         Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

Department No. 22

IN THE MATTER OF THE )
APPLICATION OF )
) WRIT NO. 5342
)
Jose Ybarra ) ORDER
)
Petitioner, )
)
FOR A WRIT OF HABEAS CORPUS )
)

A Petition for Writ of Habeas Corpus has been received.

Petitioner is presently in custody at California State Prison, San Quentin. On June 10, 1980, he was convicted of second-degree murder (Penal Code § 187) and assault with a deadly weapon (Penal Code § 245(a)), along with multiple enhancements. He was sentenced to 21 years to life.

In the present Petition, Petitioner challenges the Board of Parole Hearings' December 1, 2005 denial of parole.

1

**Applicable Law**

The Board of Parole Hearings (formerly Board of Prison Terms) has broad discretion in parole matters. (In re Powell (1988) 45 Cal.3d 894, 901.) The Board's decision must be based on "some evidence", which means the board's determination "must have some rational basis in fact." (In re Scott (2005) 133 Cal.App.4th 573, 590, n. 6, citing In re Rosenkrantz (2002) 29 Cal.4th 616, 656.) The "some evidence" standard of review is "extremely deferential." (Board of Prison Terms v. Superior Court (2005) 130 Cal.App.4th 1212, 1232; In re Rosenkrantz, supra, 29 Cal.4th at 665.) The court may not weigh the evidence, resolve conflicts in the evidence, or consider whether the evidence establishing suitability for parole "far outweighs" the evidence showing unsuitability. (Board of Prison Terms v. Superior Court, supra, 130 Cal.App.4th at 1232; Rosenkrantz, supra, 29 Cal.4th at 677, 679,) "In short, the court may not substitute its own judgment for that of the Board." (Board of Prison Terms v. Superior Court, supra, 130 Cal.App.4th at 1233.)

As the California Supreme Court has explained, the Board proceeds lawfully when, without comparing Petitioner's term to the base matrices, the Board finds the defendant unsuitable to receive a fixed and "uniform" release date by pointing to some evidence that the particular circumstances of his or her crime-- circumstances beyond the minimum elements of his conviction--

1  indicate exceptional callousness and cruelty with trivial
2  provocation, and thus suggest he remains a danger to public
3  safety.  (In re Dannenberg (2005) 34 Cal.4th 1061, 1098.)
4  　　"The nature of the prisoner's offense, alone, can
5  constitute a sufficient basis for denying parole."  (In re
6  Rosenkrantz, supra, 29 Cal.4th at 682; In re Minnis (1972) 7
7  Cal.3d 639, 647.)  However, "[i]n some circumstances, a denial
8  of parole based upon the nature of the offense alone might rise
9  to the level of a due process violation--for example where no
10 circumstances of the offense reasonably could be considered more
11 aggravated or violent than the minimum necessary to sustain a
12 conviction for that offense."  (In re Rosenkrantz, supra, 29
13 Cal.4th at 683.)

### The Commitment Offense

　　The following is a summary of the facts of the murder, read by the Board from a November 2005 Board report prepared by a correctional counselor:

> On November 10, 1979, Petitioner entered the
> home of John Barbutes, and immediately began
> punching Mr. Barbutes, a parapalegic, about the
> face and head.  Petitioner then obtained a
> frying pan from the kitchen and beat Ms.

3

Delgado, the victim of the murder, with a frying pan to the point of unconsciousness, and then began kicking her. At one point he tried to choke her. When Mr. Barbutes tried to assist Ms. Delgado, Petitioner struck Mr. Barbutes in the head with a glass bottle and fled on foot. Ms. Delgado was hospitalized and died three days later from the injuries caused by Petitioner. Mr. Barbutes was also hospitalized, but recovered from his injuries. Mr. Barbutes testified at the trial that Petitioner had told him two days earlier that he would kill Ms. Delgado. Petitioner was not arrested until November 15, 1979. While Mr. Barbutes was in the hospital, Petitioner threatened him with bodily harm should he testify. Petitioner had a long relationship with Ms. Delgado, but she was living with Mr. Barbutes at the time of the murder.

After reading this summary at the hearing, the Board asked Petitioner if the summary was accurate. (RT[1] 13:9-10.) He replied that not all of it was accurate, and challenged certain facts.

---

[1] "RT" designates the Reporter's Transcript of the December 2005 parole hearing.

**The Board's Decision**

The Board concluded that Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (RT 55:10-13.)

In so finding, the Board concluded that the offense was carried out in an especially cruel and callous manner, the victim having been beaten with a frying pan and kicked. (RT 55:14-21.) The Board found that the murder was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering, since the victim must have suffered great trauma and distress during the beating. (55:24-56:3.)

The Board also based its decision on Petitioner's prior record and history of an unstable social life, which included drug and alcohol abuse, as well as arrests for petty theft, assault with a deadly weapon, burglary, robbery, and second-degree murder. (RT 57:2-13.) Additionally, the Board noted a psychological report from October 5, 2005, which concluded that Petitioner had twice been convicted of murdering an unarmed victim, and that "it should not be assumed that Mr. Ybarra would be (indiscernible) where he felt there was sufficient justification or provocation of (indiscernible)." (RT 57:13-58:5.)

1    The Board also found that Petitioner had realistic parole
2    plans, had been disciplinary free, and had made commendable
3    achievements in several areas, including AA, religious programs,
4    and a dry cleaning vocation. (RT 58:6-25.)

### Discussion

There is at least some evidence to support the Board's denial. First, although Petitioner disputes several facts relied upon by the Board, as noted above, this Court may not weigh the evidence or resolve conflicts in the evidence. (<u>Board of Prison Terms v. Superior Court</u>, supra, 130 Cal.App.4th at 1232; <u>Rosenkrantz</u>, supra, 29 Cal.4th at 677, 679.) Additionally, the Board's discussion of the facts is supported by the evidence that was before it, including the probation officer's report, attached as Exhibit B to Petitioner's petition, which indicates that Petitioner beat the victim with a frying pan and kicked her numerous times.

Second, the Board's conclusion that the victim suffered great trauma and distress during the beating is supported by the evidence, and it is rational to conclude that such a beating displays a callous disregard for human suffering.

Third, the Board did not rely solely on the commitment offense, but also relied on the Petitioner's past conduct,

1  including drug and alcohol use, numerous arrests, and another
2  killing of an unarmed individual.
3      Finally, Petitioner contends that his trial attorney did
4  not receive notice of the hearing, as was required under Penal
5  Code § 3042. However, Petitioner has offered no evidence or
6  explanation regarding the basis for his belief that the Board
7  did not mail notice to his trial counsel. Moreover, he has
8  offered no authority, and the Court is aware of none, for the
9  proposition that a failure to send notice to an inmate's trial
10 counsel under § 3042(a) requires the Board to grant the inmate
11 parole. Rather, there exists at least some persuasive authority
12 suggesting that § 3042 does not require notice to be sent to
13 Petitioner's trial counsel where Petitioner is represented by
14 another attorney at the parole hearing. (64 Ops. Cal. Atty.
15 Gen. 882.)

17     For the foregoing reasons, Petitioner's writ of habeas
18 corpus is DENIED.

19
20 Date: 6/14/06                    _____
                                    Judge of the Superior Court