# EXHIBIT G, PART 1

ORIGINAL

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

In re JOSE YBARRA,

      on Habeas Corpus.

A114520

(San Francisco County
Super. Ct. No. 5342)

BY THE COURT:

The petition for writ of habeas corpus is denied.

**FILED**

AUG - 3 2006

Court of Appeal - First App. Dist.
DIANA HERBERT
By_____
                   DEPUTY

(Ruvolo, P.J., Sepulveda, J., and Rivera, J., joined in the decision.)

AUG - 3 2006

Date:_____   _____ P.J.

                            RUVOLO, P.J.

## AFFIDAVIT OF TRANSMITTAL

I am a citizen of the United States, over 18 years of age, and not a party to the within action; that my business address is 350 McAllister Street, San Francisco, CA 94102; that I served a copy of the attached material in envelopes addressed to those persons noted below.

That said envelopes were sealed and shipping fees fully paid thereon, and thereafter were sent as indicated via the U.S. Postal Service from San Francisco, CA 94102 or, alternatively, served via inter-office mail.

I certify under penalty of perjury that the foregoing is true and correct.

Diana Herbert, Clerk of the Court

_____          AUG - 3 2006

Deputy Clerk                                      Date


CASE NUMBER: A114520

Office of the Clerk
San Francisco County Superior Court - Main
Attention: Civil Appeals
400 McAllister Street, 1st Floor
San Francisco, CA 94102

                                                    Material Sent YES: ____


Jose Ybarra
C-18150
CSP San Quentin
2 N 13-L
San Quentin, CA 94964

                                                    Material Sent YES: ____

Office of the Attorney General
455 Golden Gate Avenue - Suite 1100
San Francisco, CA 94102

                                                    Material Sent YES: ____

serv

MC-275

Name **Mr. Jose Ybarra.**

Address **California State Prison.**

**C-18150.   #2N13-L.**

**San Quentin, CA. 94964.**

CDC or ID Number   **C-18150.**

**DUPLICATE**

APPELLATE COURT OF CALIFORNIA

FIRST APPELLATE DISTRICT

*(Court)*

**FILED**

JUL 1 9 2006

Court of Appeal - First App. Dist.
DIANA HERBERT

By_____ DEPUTY

PETITION FOR WRIT OF HABEAS CORPUS

| | |
|---|---|
| Jose Ybarra,   pro per ... | |
| Petitioner | |
| vs. | No. _____ |
| Warden of San Quentin: YLST. | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

A114520

### INSTRUCTIONS – READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed.  You should exercise care to make sure all answers are true and correct.  Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces.  If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor.  See Penal Code section 1475 and Government Code section 72193.  You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999).  Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 (Rev. January 1, 1999)          **PETITION FOR WRIT OF HABEAS CORPUS**          Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

**This petition concerns:**

[y] A conviction      [X] Parole

[ ] A sentence      [ ] Credits

[ ] Jail or prison conditions      [ ] Prison discipline

[X] Other (specify): Parole Hearing before the BPH on December 01, 2005.

1. Your name: __Jose Ybarra__

2. Where are you incarcerated? __California State Prison of San Quentin.__

3. Why are you in custody? [XX] Criminal Conviction   [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      __Second degree murder - use of a deadly weapon - prior prison__

      __violent prior enhancement - Two prior prison enhancements,__

   b. Penal or other code sections: __Penal Code § 187 - 2nd. § 12022(b), § 667.5, § 667.5(b)__

   c. Name and location of sentencing or committing court: __San Francisco City and County Superior__

      __Court. Hall of Justice. 850 Bryant St. San Francisco, CA. 94103.__

   d. Case number: __101295.__

   e. Date convicted or committed: __June 10, 1980.__

   f. Date sentenced: __June 10, 1980., tuesday 0900 hrs.__

   g. Length of sentence: __21 years to life; mixed sentence determinate & indeterminate.__

   h. When do you expect to be released? __Upon Board of Prison Terms suitability finding.__

   i. Were you represented by counsel in the trial court? [X] Yes. [ ] No. If yes, state the attorney's name and address:

      __San Francisco City & County Public defender: Robert Berman.__

4. What was the LAST plea you entered? *(check one)*

   [X] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [X] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

---

## FACTS

### INTRODUCTION OF PETITIONER.

Petitioner in this habeas corpus petition is Mr. Jose Ybarra acting as own counsel pro per.

Petitioner Ybarra is of advance age of 73 years which is only 5 years away from the life expectancy of an american male of 78 years.

Mr. Ybarra has been incarcerated for approximately 26 years on the present offense. The incarceration began in 1979., when petitioner had just turned 47 year old.

Time has aged Mr. Ybarra so that his appearance shows a frail graying white male of Hispanic genealogy at the slight build of 5 feet, 3 inches. Petitioner shows most of the normal aging processes expected of a senior citizen of 73 years. There is the advanced age weight or muscle mass loss so that his current body weight is approximately 150 pounds.

His advanced age presents some memory problems, but that be related to his disability of memory problems occurring before 1979., the date of the present offense. Physical health bad although like most long term incarcerated prisoners his physic presents as someone maybe 10 years younger, but his actual medical health condition is of someone 10 to 20 years older than his present age of 73 years. This is normal of prisoners in California whom exercised regularly throughout their incarceration, but were fed a substandard diet, and were given little or no medical health treatment from CDC&R.

## FACTS

### INTRODUCTION OF PETITIONER.

Petitioner Ybarra suffers from heart conditions, and high blood pressure for which he takes daily medication for - now that the federal courts have taken over CDC&R's medical services. The heart condition and high blood pressure leaves petitioner frail with little strength or stamina. Petitioner's eyesight is in poor condition in that he must wear, so called 'coke-bottle-lens', glasses at all times just to see properly.

Petitioner Ybarra has been diagnosed, by CDC&R Doctors, and outside Community Doctors, as having prostrate cancer. Although the medical experts are convinced of the diagnoses by medical testing, they also admit that they are 'stumped' as to why they cannot find the actual prostrate cancer tumor. Perhaps Mr. Ybarra's immune system may just hold the key to helping find a cure for this deadly disease of older men.

Because CDC&R has no retirement age for working prisoners, neither by statue or regulation, petitioner at 73 years of age is still working in Prison Industries Authority (PIA) as an upholsterier. Petitioner has consistently earned high rating work reports from his PIA Supervisors.

Petitioner has made viable parole plans to find employment upon parole release so as to contribute to society.

-7

FACTS.

BPH DETAILS.

Petitioner Ybarra appeared before the California Board of Prison Hearings, (BPH), formerly known as the Board of Prison Terms, (BPT), for his ____ Subsequent Parole Consideration Hearing. The danger to society consideration hearing took place on December 01, 2005.


Present for the Hearing were:


Tracey St. Julien, Presiding Commissioner.

Joseph Johnson, Deputy Commissioner.

Mr. Jose Ybarra, Petitioner, pro per.

Scott Handleman, Attorney Appointed to Represent Mr. Ybarra.


The BPH pursuant to California Penal Code Statue § 3042, sent notices to all proper parties of action, with the exception of Petitioner's appointed at trial, Public Defender: Robert Berman, ESQ., 850 Bryant St. San Francisco, CA.

Mr. Robert Berman's name, public defender statues, and address are present upon the first page of the following Documents as attached Exhibits:


See Exhibit C: Probation Officers Report first page is # 3, as pages 1 & 2 are missing from the Official Copy kept in prisoner Ybarra's Central File of CDC&R records.

See Exhibit E: Sentencing Trans. pg. 1.

-8-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACTS.

BPH DETAILS.

During the December 01, 2005., parole hearing the BPH pursuant to the governing statues and regulations considered all relevant and reliable evidence, including testimonial evidence by petitioner Ybarra. The BPH also considered as evidence photographs of a deceased murder victim, and apparently not the victim of petitioners 2nd degree offense. Exactly whom was depicted in the photographic evidence and how graphic in horrid detail remains to be discovered upon a grant of discovery motion should a Reviewing Court Grant a Show Cause Order.

See Exhibit A: BPH's Hearing Trans. pg. 15 line(s) 13 - 23.

1                          FACTS

2                    DENIAL FINDINGS.

3        The BPH used  7  reasons to deny Mr. Ybarra parole.

4   The reasons giving by the BPH for parole denial are as follows:

5

6   The first denial finding of the BPH's decision is:

7

8              " Specifically, as in regards to the commitment

9              offense, the offense was carried out in an espe-

10             cially cruel and callous manner in that the vic-

11             tim in this case, Linda Delgado, who at age 49 at

12             the time, was killed by the inmate.  She was bea-

13             ten with a frying pan from the kitchen, and she

14             was taken to the hospital for these injuries and

15             died at the hospital approximately three days

16             later."

17

18  Exhibit B: BPH Denial Trans.  pg. 1  line(s) 14 - 24.

19

20  The second denial finding of the BPH's decision is:

21

22             " This offense was carried out in a manner which

23             demonstrates an exceptionally callous disregard

24             for human suffering in that indeed Ms. Delgado

25             certainly must have suffered great trauma and

26             distressed during this beating (Indiscernible)."

27

28  Exhibit B: BPH Denial Trans. pp. 1 & 2 line(s) 24 - 27 & 1 - 3.

                          -10-

1                              FACTS

2                        DENIAL FINDINGS.

3   The third denial finding of the BPH's decision is:

4

5          " And the motive for the crime was inexplicable or

6          very trivial in relation to the offense in that

7          apparently Mr. Ybarra was jealous over the victim

8          and the other victim in this case, Mr.

9          Barbutes. "

10

11  Exhibit B: BPH Denial Trans. pg. 2 line(s) 3 - 7.

12

13  The fourth denial finding of the BPH's decision is:

14

15          " And in terms of prior criminal record, Mr.

16          Ybarra has an escalating pattern of criminal

17          conduct and violence, and a record of violence

18          and assaultive behavior, and has failed to

19          profit from society's previous attempts to cor-

20          rect his criminality (indiscernible) prior prison

21          terms."

22

23  Exhibit B: BPH Denial Trnas. pg. 3 line(s) 2 - 8

24

25

26

27

28

1       FACTS.

2       DENIAL FINDINGS.

3   The fifth denial finding of the BPH's decision is:

4

5           " There's also a history of an unstable social

6           life, which includes illegal narcotics, alcohol

7           abuse for many years, as well as arrests

8           for petty theft, assault with a deadly weapon,

9           burglary, robbery, as well as a second-degree

10          murder."

11

12  Exhibit B: BPH Denial Trans. pg. 3 line(s) 8 - 13.

13

14  The sixth denial finding of the BPH's decision is:

15

16          " And a psychological report dated October 5th,

17          2005 authored by Dr. Eniva is conditional wherein

18          she states at the end of her report:

19              " Mr. Ybarra's been twice covicted of murder

20              of an unarmed victim, a male and a female.

21              While his increasing age is an (indiscern-

22              ible) factor, (indiscernible) was a factor

23              in relationships where the other

24              person(indiscernible).  While substance

25              abuse is most likely a factor in his crim-

26              inal behavior, it should not be assumed that

27              Mr. Ybarra would be (indiscernible) where

28

FACTS.

DENIAL FINDINGS

he felt there was sufficient justification

or provocation of (indiscernible)."

Exhibit B: BPH Denial Trans. pp. 3 & 4 line(s) 13 - 26 & 1 - 5

BPH COMMENDATIONS.

The BPH commended petitioner Ybarra for the following:

" Nevertheless, we would like to commend
him for being disciplinary-free, (indiscer-
nable) , the Vietnam Vets group, and (indisce-
rnable) religious program, (indiscernable)
program, as well as obtaining (indiscernable)
and dry cleaning vocation. "

Exhibit B: BPH Denial Tran. pg. 4 line(s) 19 - 25.

DENIAL FINDINGS.

The BPH then added the additional denial finding. The seventh
denial finding of the BPH's decision is:

" And therefor, a longer period of observation
and evaluation of the inmate is required before
the Board should find that he is suitable. "

Exhibit B: BPH Denail Trans. pg. 4 & 5 line(s) 25 - 26 & 1 - 2.

-13

FACTS.

CRIMINAL OFFENSE

OFFICIAL VERSION.

The following facts are taken from the BPH's parole hearing transcripts of the December 01, 2005., parole hearing for Jose Ybarra. Apparently the BPH is quoting the version of the offense verbatim from the Probation Officers Report. The BPH's version of offense is as follows:

" On November 10, 1979., Mr. Ybarra entered the premises of John Barbutes, B-A-R-B-U-T-E-S, and immediately began punching Mr. Barbutes, a paraplegic, about the face and head. He then obtained a frying pan from the kitchen and beat Ms. Delgado, the victim in this case, with a frying pan to the point of unconsciousness, then began kicking her. And at one point tried to choke her. When Mr. Barbutes tried to give some assistance, [Mr.] Ybarra struck Mr. Barbutes in the head with a glass bottle and fled on foot. Ms. Delgado was hospital (sic) and died three days later from the injuries caused by [Mr.] Ybarra. Mr. Barbutes was also hospitalized, but recovered from his injuries.

-14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FACTS.

### CRIMINAL OFFENSE

### OFFICIAL VERSION.

Mr. Barbutes testified at the trial that [Mr.] Ybarra had told him two days earlier that he would kill Ms. Delgado. [Mr.] Ybarra was not arrested until November 15, 1979. While Mr. Barbutes was in the hospital, [Mr.] Ybarra threatened him with bodily harm should he testify. "[Mr.] Ybarra had a long term relationship with Ms. Delgado, but she was living with Mr. Barbutes at the time of the murder. "

See Exhibit A: BPH Hearing Trans. pp. 12 line(s) 2 - 27 & pg. 13 line(s) 1 - 8.

See Exhibit C: POR pp. 4 - 5.

See also Prisoner's version of the criminal offense, and the facts that are in dispute from the official version.

FACTS.

CRIMINAL OFFENSE

PRISONERS VERSION.

The petitioner Mr. Ybarra has factual disputes with several of the facts from the Official Version of the Commitment Offense. It should be noted: at the time of the offense Mr. Ybarra was disabled within the meaning of the Americans With Disability Act. At the time of the offense, in 1979, petitioner Ybarra was receiving SSI disability for organic brain problems and cognitive memory problems. A CAT or PET scan was used to confirm the disability.

This raises the issue of, whether or not, petitioner Ybarra has ever received a fair trial, or subsequently fair interviews with prison officials, preparing BPH reports. Including the fact petitioners ADA rights were violated in the December 10, 2005., parole hearing.

Petitioner Mr. Ybarra has been incarcerated for 26 years now on the commitment offense. Mr. Ybarra began his incarceration in 1979, at the age of 46 years. Now some 26 years later, Mr. Ybarra is age 72 year. This is only 6 years away from the National Average life span for an American. Consequently, as a result of the natural aging process, petitioner Mr. Ybarra's memory has somewhat faded. Mr. Ybarra's is of sound mind, but his memory about the facts surrounding the commitment offense is somewhat vague. Nevertheless Mr. Ybarra disputes facts about the offense. The facts may point to a lesser manslaughter instead of 2nd degree.

FACTS.

CRIMINAL OFFENSE

PRISONERS VERSION.

Because of petitioner Ybarra's apparent disability, should a Reviewing Court grant an Order to Show Cause; petitioner hereby motions the Reviewing Court to grant an Evidentiary Hearing: to discover the disputed facts, and any medical testing to establish petitioner Ybarra's cognitive memory disability.

DISPUTED FACTS.

Most of the disputed facts revolve around statements made by the second victim John Barbutes (Some documents spell it Barabutes ).

Mr. Barbutes made two different statements: The first statement was made to the San Francisco Police Department (SFPD), and was included in the Probation Officer's Report (POR) under the heading of SFPD Initial Incident Report;

2. The second statement was made under oath at the preliminary hearing portion of the trial.

Both of Mr. Barbutes's statements differ in facts. Mr. Barbutes initial statement to the SFPD in the Initial Incident Report was far less egregious than his later testimony after Ms. Delgado had passed away.

See Exhibit C: Probation Officers Report of 06/10/80 pp. 3 - 12.

1

### FACTS.

2

CRIMINAL OFFENSE

3

PRISONERS VERSION.

4

### DISPUTED FACTS.

5    The dispute facts problem starts with the Probation Officers

6    Report.  The  POR  includes  both  of  Mr.  Barbutes  statements.

7    Mr. Barbutes statements are recorded factually, and are included

8    in the POR under the heading of:

9

10        1.) SFPD Initial Incident Report, on page 3.

11

12        2.) From the preliminary hearing;  bottom of page 4.

13

14    This only available copy of the POR is filed in petitioner's

15    prison file kept by the California Department of Corrections and

16    Rehabilitation  (CDC&R).  Files  kept  by  CDC&R  on  prisoners  are

17    known as Central Files, or C-Files for short.

18    The POR kept in the C-file is stamped: Best Copy Available.

19    Someone from CDC&R seems to have modified petitioner Ybarra's

20    POR report with handwritten additions to Mr. Barbutes statements

21    in the SFPD Initial Incident Report, on page 3.  Specifically,

22    the modifications take facts from Mr. Barbutes statements excerpted

23    from the preliminary hearing portion of the POR, on page 4.

24    The modifications blur the fact that there is differences

25    between Mr. Barbutes two statements.  The handwritten Modifications

26    include: "paraplegic", and "with a frying pan".  And it is these

27    modified facts that petitioner has disputes the accuracy of them.

28

1 | FACTS.

2 | CRIMINAL OFFENSE

3 | PRISONERS VERSION.

4 | DISPUTED FACTS.

5 |     Subsequently whenever any CDC&R official prepares a counselors

6 | report, or psychological report this illegal modification taints

7 | their view.

8 |

9 | See Exhibit C: POR at page 3; SFPD - Initial Incident Report

10 |

11 | The specific facts in dispute are as follows:

12 |

13 |         1.) The frying pan as a weapon charge.  Petitioner did

14 |         not use a frying pan as a weapon.  No victim, neither

15 |         Mr. Barbutes, nor Ms. Delgado were assaulted with a

16 |         frying pan.  Petitioner categorically denies the weapon

17 |         charge of a frying pan despite the jury finding of guilt

18 |         on this charge.  Petitioner's lawyer Paul Berman was

19 |         IAC in presenting a defense, and cross examining the

20 |         witness Mr. Barbutes concerning facts concerning the

21 |         weapons charge of use of a frying pan as a deadly weapon.

22 |

23 | See Exhibit D: Information Charges Report pp. 1 - 2, see pg. 1.

24 | See Exhibit E: Sentencing Trans. pg. 4 line(s) 6 - 12.

25 |

26 |

27 |

28 |

1

**FACTS.**

2

CRIMINAL OFFENSE

3

PRISONERS VERSION.

4

DISPUTED FACTS.

5

6    2.) The paraplegic statues of victim Mr. Barbutes, as

7    this person was not a paraplegic. Mr. Barbutes lived

8    on the second floor of a cheap hotel that did not have

9    an elevator. The room rented by Mr. Barbutes was a

10   one room hotel converted to apartments. Petitioner

11   met Mr. Barbutes on two prior occasions, and knew Mr.

12   Barbutes as the employer of his common law wife Linda

13   Delgado. Mr. Barbutes was disabled or handicapped with

14   mobility impairment, and received SSI disability for

15   being so. Ms. Delgado was employed as Mr. Barbutes

16   SSI payee. The SSI program will pay an extra $ 200

17   dollars for a person to take care of an SSI recipient's

18   financial needs. It is also a common street scam for

19   SSI recipients to find a financial caretaker and split

20   the extra moneys. Both times petitioner met with Mr.

21   Barbutes he could walk. When Mr. Barbutes came to Court,

22   to testify at the preliminary hearing, he could walk.

23   Mr. Barbutes was having sex with petitioner's wife right

24   the unfortunate offense happened. To claim Mr. Barabutes

25   was paraplegic was a falsehood used to inflame the jury.

26

27   See Exhibit A: BPH Hearing Trans. pg. 17 line(s) 12 - 18.

28

FACTS.

CRIMINAL OFFENSE

PRISONERS VERSION.

DISPUTED FACTS.

See Exhibit E: Sentencing Trans. pg. 5 line(s) 2 - 5.

3.) Petitioner categorically denies ever punching, kicking, or choking the victim Ms. Delgado. Petitioner concedes to the fact of slapping the victim Ms. Delgado, one time. This one slap caused Linda to fall back onto a couch, and she cut herself either upon a spring sticking out of the couch, or upon some of the broken glass from the bottle that the victim Mr. Barbutes was struck upon the head with. At that point Linda reached behind her back with her hand and brought it forward with some blood on it, and said, "Joe I'm cut call an ambulance." Immediately petitioner ceased and called for an ambulance upon Mr. Barbutes's phone. The autopsy report along with Ms. Delgado's hospital medical records will substantiate that she was never hit with a frying pan, punched, kicked, or choked.

See Exhibit E: Sentencing Trans. pg. 4 line(s) 4 - 21.
See Exhibit A: Hearing Trans. pg. 10 line(s) 12 - 17, also pg. 12 line(s) 2 - 27 & pg. 13 line(s) 1 - 12. & pg. 14 line(s) 16 - 20.

FACTS.

CRIMINAL OFFENSE

PRISONERS VERSION.

DISPUTED FACTS.

4.) Petitioner denies he ever fled on foot away from the scene. Instead what petitioner did do was stay to call for an ambulance. When the paramedics got there petitioner helped them put Linda and Mr. Barbutes onto the ambulance. Mr. Barbutes told petitioner to stay and watch the apartment, so petitioner stayed the night there. The next day Mr. Barbutes called from the hospital, and asked petitioner to bring a change of clothes for him and Linda so they could leave the hospital. Petitioner took clothes to the hospital and visted Linda and she was unconscious, but the Doctor said that she was on a machine and needed a blood transfusion. The Doctor said that Linda would make it even with all the health problems she was having. The Doctor asked if Linda had medical insurance to cover the cost of keeping her on the machine, and to pay for the transfusion and hepatitis liver transplant. Petitioner told the Doctor there that Linda had SSI and Medicaid.

See Exhibit A: BPH Hearing Trans. pg. 12 - 18.

FACTS.

CRIMINAL OFFENSE

PRISONERS VERSION.

DISPUTED FACTS.

5.) Petitioner denies ever going to the kitchen to obtain a frying pan. Mr. Barbutes lived in a run down converted Hotel on Leavenworth street, in the infamous tenderloin district of San Francisco. The room was in a cheap Hotel that had been converted to renting its rooms out in apartment style of rental arrangement. The Hotel that Mr. Barbutes lived in did not allow cooking in its rooms. Nor did the room contain a kitchen as it was only one room on the Second floor of a Cheap Hotel.

See Exhibit A: BPH Hearing Trans. pp. 12 line(s) 2 - 27 & pg. 13 line(s) 1 - 8.

See Exhibit C: Probation Officers Report pp. 3 - 5.

6.) Petitioner categorically denies ever telling Mr. Barbutes that 'two days earlier he would kill Ms. Delgado'. Or that petitioner had threatened Mr.Barbutes, while he was in the hospital, with bodily harm.

See Exhibit A: BPH Hearing Trans. pp. 12 line(s) 2 - 27 & pg. 13 line(s) 1 - 27.

See Exhibit C: Probation Officers Report pp. 3 - 5.

FACTS.

CRIMINAL OFFENSE

PRISONERS VERSION.


The following is taken from the Probation Officers Report, at pages 5 - 6, titled under the heading of "DEFENDANT'S STATEMENT:"


" I never denied that I was responsible. To me it was an accident. If I wanted to kill her, I am an addict and she is an addict and I could of given her some bad drug. To me it was an accident. She was operated on twice at the hospital and had many complications such [as] cirrhosis of the liver, pneumonia, a bloodclot. And several other things. On that night I had been drinking. I had a fix earlier that day, and I just lost control of myself. I did not know that I hurt her that bad.


The whole thing started this way. I had an apartment on Ellis Street. Linda was allowed to stay at my place when I was sentenced to county jail, and she began bringing dudes up to my apartment to do drugs and ect.


She only visted me three times while I was in jail. One day she came to see me, and we had an argument. And I cut her loose, and told her, " to go her own way and I would go mine ".


See Exhibit C: Probation Officers Report pp. 5 - 6


-34-

1

FACTS.

2

CRIMINAL OFFENSE

3

PRISONERS VERSION.

4

5  On the date I was released from county jail, one of the

6  deputies told me that my wife had called and told me to catch

7  a cab and come home right away.

8

9  She had told me that, " she was staying with an old man who

10  was a [(paraplegic)(sic)], and that she was just staying there

11  to assist him in cleaning his place."

12

13  Prior to this she had lost all of my clothes and sold a car

14  of mine without my permission.  I had forgiven her for this.

15

16  The old man [Mr. Barbutes] indicated that I could stay at

17  the house [Mr. Barbutes hotel room] until I received one of my

18  [SSI Disability] checks.

19

20  One night I woke up and Linda was gone.  I asked the old

21  man [Mr. Barbutes] where she was ?  And he said that Linda [Ms.

22  Delgado] had left because she was angry with me. [Mr. Ybarra].

23

24  I [petitioner] asked the old man [Mr. Barbutes] if I could

25  stay there ? And he said, "no because he would get in trouble

26  with the housing authority ".

27  See Exhibit C: Probation Officers Report pp. 5 - 6

28

-35-

FACTS.

CRIMINAL OFFENSE

PRISONERS VERSION.


I [petitioner] left and went over to a friend's place.  My friend and I began drinking earlier that day and were doing some drugs.


I began to get wasted and wound up where Linda and the old man [Mr. Barbutes] were staying.  I knocked on the door and Linda had a blanket around her, and I noticed that she had on no clothes, just panties and a bra.  I was hurt and pissed off and started slapping her around, and the old man put his two cents in, and I struck him with a wine bottle.


She [Ms. Delgado] was my woman [wife] since 1971., and she was always playing games.  When I [petitioner] went to state prison. I did not have to go when they came up with charges on Linda and me to allow her to remain free.  [Petitioner and Ms. Delgado had been arrested in 1973 because SFPD had a warrant to arrest Linda for Heroin Dealing.  Petitioner took the fall, or agreed to plead guilty falsely in order to keep Linda from having to go to prison.]


She did many bad things to me.  As I said before, she sold my car, and while I was in prison she was sending some money to a guy in San Quentin.  She asked me to forgive her for that, and I did.  I had a lot of patience with her.

FACTS.

CRIMINAL OFFENSE

PRISONERS VERSION.


I did not intentionally try to kill her [Ms. Delgado].    To me it was an accident.  I just lost control of myself.  I realize that I am responsible and I accept that responsibility.  The only thing is I don't see why the Courts would give me more time than they would anyone else.  I am willing to do what I've got coming, no more and no less.  But it feels unfair to me that people like Dan White, and other guys up here who I know have committed intentional murder, robbery, and everything else, receive one year in the county jail.  And others receive no more than three or four years in state prison.


As I stated before, I loved Linda Delgado, and I still do.  I just didn't know I had hurt her that bad. "

See Exhibit C: Probation Officers Report pp. 5 - 6

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

For petitioner's December 01, 2005., parole hearing the BPH sent the required by statute, California Penal Code § 3042 notice to the wrong attorney; thereby, depriving petitioner of mitigating evidence from his trial Attorney's § 3042 reply to notice. This action by

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

the BPH violated petitioner's Due Process of Law rights under the California Constitution and U.S. Constitution Clauses.

See attached statement of FACTS and attached Grounds 1 - ____ .

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

See attached TABLE OF CASE LAW.

1                GROUND 1.

2              CONTENTION

3           LEGAL FRAMEWORK

4      The California Government's Legislative Branch has created

5 a statutory scheme governing parole of all Indeterminate sentenced

6 prisoners. The Legislature placed authority over to the Executive

7 Branch of Government under Penal Code § 5075, § 5075.5, § 5076,

8 § 5076.1, § 5076.2, § 5076.3, § 5077, § 5078.

9      The Board of Prison Hearings (BPH) holds parole hearings

10 pursuant to Penal Code § 3040, § 3041(a)(b), § 3041.5, § 3042,

11 § 3043, § 3043.1, § 3043.2, § 3043.25, § 3043.3, § 3043.5, § 3043.6,

12 § 3046.

13      The BPH as pursuant to Penal Code § 5076.1 has promulgated

14 regulations, these are known as, California Code of Regulations

15 (Title 15 § 2400 - 2411.(CCR  Tit. § )

16      Under CCR Tit. 15 § 2402 subd. (b)., the BPH is required to

17 consider

18

19           " All relevant, reliable information available to the

20           panel shall be considered in determining suitability

21           for parole. Such information shall include the

22           circumstances of the prisoner's social history; past

23           and present mental state; past criminal history, including

24           involvement in other criminal misconduct which is reliably

25           documented; the base and other commitment offenses,

26           including behavior before, during and after the crime;

27           past and present attitude toward the crime; any conditions

28           of treatment or control, including the use of special

1               GROUND 1.

2              CONTENTION

3            LEGAL FRAMEWORK

4

5        conditions under which the prisoner may safely be released

6        to the community; and any other information which bears

7        on the prisoner's suitability for release.    Circumstances

8        which taken alone may not firmly establish unsuitability

9        for parole may contribute to a pattern which results

10       ⁀ in a finding of unsuitability. "

11

12   In re Dannenberg (2005) 34 Cal. 4th. 1061.

13

14     Under Penal Code § 3042(a) the BPH is required to send a notice

15   to the following persons:

16

17        1.)  The Judge of the Superior Court before whom the

18             prisoner was tried and convicted.

19        2.)  The Attorney who represented the Defendant at Trial.

20        3.)  The District Attorney of the County in which the

21             offense was committed.

22        4.)  The Law Enforcement Agency that investigated the

23             case.

24

25

26

27

28

GROUND 1.

CONTENTION

LEGAL ARGUMENT


Right before, petitioner's December 01, 2005., parole hearing, the BPH mailed out Penal Code § 3042 notices to all the persons required by statue, except for the Attorney who represented petitioner at trial. Instead what the BPH did was to mail out a § 3042 notice to an Attorney named Susan Rutberg, who is a Professor of Law, and 25 years ago did some work for the Public Defenders Office in San Francisco.

Dr. Rutberg mailed a § 3042 notice - reply letter. In Dr. Rutberg's letter she expresses confusion as to why she received a Notice of Hearing.

See Exhibit D: 3042 Notice - Reply Letter of Susan Rutberg.


The reason as to why the BPH mailed a 3042 Notice to this Attorney is puzzling. Because the Attorney, who represented petitioner at trial, has his Name and Address clearly printed upon the Probation Officers Report, and the Sentencing Transcripts from Superior Court. Both of these documents are part of petitioner's Central File kept by CDC&R.

The Attorney who represented petitioner at trial Name and Address is as follows:

> Robert Berman ESQ.
> Public Defender Office
> 850 Bryant Street.
> San Francisco, CA. 94133.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GROUND 1.

CONTENTION

LEGAL ARGUMENT

See Exhibit C: Probation Officers Report. pg. 3

See Exhibit E: Sentencing Trans. pg. 1


Petitioner has a right by both statue and regulation to have a 3042 notice sent to the Attorney who represented petitioner at trial. The BPH did not mail a 3042 Notice to petitioner's trial Attorney: and therefore the BPH violated petitioners Due Process of Law rights. The violation of these rights is important because the BPH must consider all relevant and reliable evidence. This would include any mitigating evidence such as a 3042 notice - reply from petitioners trail attorney. The trial attorney Mr. Berman would have unique insight into the criminal offense. Mr. Berman would of offered key evidence that would of resulted in a different outcome in the parole hearing. The BPH would have found petitioner suitable for parole had they had the benefit of Mr. Berman's 3042 notice - reply letter.

In re Dannenberg (2005) 34 Cal. 4th. 1061.

McQuillion v. Duncan, 306 F.3rd. 895, 901 - 904. (9th Cir. 2002)

7. Ground 2 or Ground ___2___ *(if applicable)*:

The BPH in petitioner's December 01, 2005., parole hearing,
considered evidence that was un-relevant, unreliable, and illegal;
thereby violating petitioner's Due Process of Law Rights under the
California and United States Federal Constitutions.

a. Supporting facts:

See attached statement of FACTS and attached Grounds 1 –

b. Supporting cases, rules, or other authority:

See attached TABLE OF CASE LAW.

MC-275 [Rev. January 1, 1999]          **PETITION FOR WRIT OF HABEAS CORPUS**          Page four of six

-43

GROUND 2.

CONTENTION

LEGAL ARGUMENT

1. The BPH in the December 01, 2005., parole hearing considered
2. as evidence, photographs of a deceased murder victim.

See Exhibit A: BPH Hearing Trans. pg. 15 at line(s) 13 - 23.

What is amazing about these photographs is that they were not even relevant to petitions case, as the photographs depicted a deceased murder victim from some other case. In fact the photographs depicted a deceased male victim while in petitioner's case the victim, Linda Delgado, was a female. The photographs by their nature - i.e. of a deceased murder victim - are graphic in bloody and horrid detail.

The BPH may consider all relevant and reliable evidence pursuant to their regulations - CCCR Tit. 15 § 2402. However, the BPH's purpose in upholding the law of Penal Code § 3041(a)(b) is to determine if the prisoner would pose an unreasonable risk of danger to society. The BPH is restricted to making a prediction about the prisoners future behavior. So the evidence the BPH uses in making this prediction should be limited to just that - "determining if the prisoner is dangerous".

So how do photographs, of the murder victim, have bearing on the BPH's job of predicting, whether or not, the prisoner is dangerous?

GROUND 2.

CONTENTION

LEGAL ARGUMENT

While a jury is allowed to view crime scene photographs of deceased murder victims, the jury is determining the guilt or innocence of the defendant. But what a jury does and what the BPH does are two different things.

The evidence of deceased victims depicted in photographs would taint the BPH's decision about the prisoner's suitability for parole. : Such photographs are highly inflammatory and prejudice to petitioner having a fair parole hearing. The photographs caused the BPH to determine petitioner was an unreasonable risk of danger to society. When in fact just the opposite is true, petitioner is no risk to anyone especially society.

The harm to the fairness of petitioner's parole hearing is more so because the BPH Commissioners are looking at photographs from some other prisoner's crime.

By the BPH considering this evidence they violated petitioner's Due Process of Law Rights.


In re Shaputis (2005) 135 Cal.App. 4th. 217,

In re Dannenberg (2005) 34 Cal. 4th. 1061.

McQuillion v. Duncan, 306 F.3rd. 895, 901 - 904. (9th Cir. 2002).

7. Ground 2 or Ground __**3**__ (if applicable):

The BPH, in finding petitioner, unsuitable for parole with denial reason

# __1__ , misapplied its regulations to the commitment offense, causing

a Due Process of Law violation of petitioner's constitutional rights

under Constitution of California, and Constitution of United States

a. Supporting facts:

See attached statement of FACTS and attached GROUNDS 1 - 9.

b. Supporting cases, rules, or other authority:

See attached statement of FACTS and attached GROUNDS 1 - 9.

# GROUND 3

## CONTENTIONS

### LEGAL FRAMEWORK

The BPH, in finding petitioner, unsuitable for parole in denial reason # 1, misapplied its regulations to the commitment offense, causing a Due Process of Law Violation of petitioner's constitutional rights under Constitution of California, and Constitution of United States.

The BPH's primary reason for denying parole was based on the commitment offense, of petitioner. The BPH's First denial reason was as follows:

> **"Specifically, as in regards to the commitment offense, the offense was carried out in an especially cruel and callous manner in that the victim in this case, Linda Delgado, who at age 49, at the time, was killed by the inmate. She was beaten with a frying pan from the kitchen, and she was taken to the hospital for these injuries and died at the hospital approximately three days later."**

Apparently the BPH is applying their regulation CCR Title 15 § 2402(c)(1)(D).

The BPH is authorized to hold parole hearings for all indeterminate sentenced prisoners. The BPH pursuant to their regulations CCR title 15§2281(a)(b)(c)(1)(A)(B)(C)(D)(E)(2)(3) (4)(5)(6)(d)(1)(2)(3)(4)(5)(6)(7)(8)(9); has 15 reasons to find a prisoner suitable, or unsuitable for parole. A reviewing court, in conducting an inquirer into a habeas corpus petition from a prisoner alleging a violation of due process by the BPH, will not reweigh the evidence de novo, but only look to see if ; there is some evidence to support the BPH's decision.