# EXHIBIT G, PART 2

**GROUND 3**

It is petitioner's contention that there is no evidence to support the BPH's denial reason # 1, and that the BPH misapplied its regulation in denying parole for two reasons:

1.) This offense is a second-degree conviction and there is nothing so particularly egregious about this offense more than the minimum necessary to sustain a conviction for second-degree.

2.) The BPH's sole reliance upon the commitment offense alone is not enough to justify a denial of parole without violating the due process requirements due in a parole hearing.

In re Scott (2004) 119 Cal. App.4th. 871

Irons v. Warden of CSP-Solano (N.D. Cal. 2004) 358 F.Supp.2nd 936.

///

///

-48

# GROUND 3

Petitioner is convicted of second-degree murder instead of first-degree murder for two primary reasons:

1.) The offense has no elements of malice aforethought

2.) The offense meets with the classic definition of what a second-degree murder is i.e. one that happened during the heat of passion.

The offense occurred after petitioner became highly jealous after seeing his common-law-wife having sex with another man.

While there is a factual dispute over what transpired during the assault? Upon Ms. Delgado there is nothing so particularly egregious to support a conviction of more than second-degree.   In fact there is evidence from the facts of the offense to support a lesser conviction of manslaughter.

In re Shaputis (2005) 135 Cal. App. 4th 217.

In re Smith (2003) 14 Cal. App. 4th 343.

In re Scott (2004) 119 Cal. App. 4th 871, 884.

Biggs v. Terhune (9th Cir. 2003) 334 F.3d. 910, 916.

Irons v. Warden CSP-Solano (E.D. Cal. 2005) 358 F.Supp. 2d. 936, 947 and fn. 2

///

///

7. Ground 2 or Ground ____4____ (if applicable):

The BPH, in finding petitioner, unsuitable for parole with denial reason

# _2_ , misapplied its regulations to the commitment offense, causing

a Due Process of Law violation of petitioner's constitutional rights

under Constitution of California, and Constitution of United States

a. Supporting facts:

See attached statement of FACTS and attached GROUNDS 1 - 9.

b. Supporting cases, rules, or other authority:

See attached statement of FACTS and attached GROUNDS 1 - 9.

# GROUND 4

# CONTENTIONS

# LEGAL FRAMEWORK

The BPH, in finding petitioner unsuitable for parole with denial reason # 2, misapplied its regulations to the commitment offense, causing a Due Process of Law violation of petitioner's constitutional rights under Constitution of California, and Constitution of United States.

The BPH's primary reason for denying parole was based on the commitment offense, of petitioner. The BPH's # 2 reason for denying parole is as follows:

**"This offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering in that indeed Ms. Delgado certainly must have suffered great trauma and distress during this beating (Indiscernible)." "**

The BPH in Denial reason # 2 (also # 1 - 7) are misapplying their regulation CCR Title 15 § 2281(c)(1)(D). While the BPH placed little or no emphasis on suitability for parole factors, such as the following; CCR Title 15 § 2281(d)(1)(3)(4)(7)(8)...

Again the BPH's primary reason for denying parole in denial reason # 2 (also # 1 - 7) is based upon the commitment offense.

Petitioner contends that there is no evidence to support denial reason # 2. That the parole decision by the BPH is limited to evaluating if the prisoner poses a "current risk". And that sole reliance upon the commitment offense alone violates due process of law.

In re Shaputis (2005) 135 Cal. App. 4th. 217.

### GROUND 4.

Petitioner was specifically acquitted of 1st degree murder and convicted of 2nd degree. See the Shaputis case:

> **"The BPT's finding that Shaputis acted in a dispassionate and calculated manner, in addition to being inconsistent with the jury's verdict acquitting him of first degree murder (cf. Scott, [2005] 119 Cal. App. 4th. 889-890), is unsupported by (and indeed may be irreconcilable with) the evidence on which BPT purported to rely. Accordingly, the BPT's reliance on this factor was arbitrary and capricious, (Scott, at pp. 891-892)"**

In re Shaputis (2005) 135 Cal. App. 4th. 217.

Similarly petitioner's 2nd degree murder has elements of callousness by its very nature. See the Smith case:

> **"[A]ll second degree murders by definition involve some callousness - i.e., lack of emotion or sympathy, emotional insensitivity, and indifference to the feelings and suffering of others"**

In re Smith (2003) 114 Cal. App. 4th. 343, 366 - 367.

However there is no evidence form petitioners offense to support the BPH's use of any of the denial findings (# 1 - 7) especially denial reason # 2, as argued here in Ground 4.

## GROUND 4.

Petitioner does concede that that he slapped the victim, Linda Delgado, and that this assault lead to the victim dying in hospital three days later. Petitioner did not continue with the assault to the point of death, but ceased when Linda suddenly seemed seriously hurt. Petitioner called an ambulance, and helped the paramedics put Linda and Mr. Barbutes upon the ambulance. Petitioner also visited Linda in the hospital the next day to inquire about her injuries, and talked with a Doctor about Linda's prognosis and her ability to pay for health care. Petitioner attempted to speak with Linda, but was unable to do so because the Doctor had her sedated. Petitioner contends that these are not the actions of someone acting with exceptional callous disregard for human suffering.

These facts may be in dispute from the so called 'official version' of facts; however, even if the reviewing court accepts the official version of facts there still is no evidence that the offense was exceptionally callous in disregard for human suffering.

Petitioner ceased the assault before Linda was even near death, and that fact, by itself, proves petitioner did not act with exceptionally callous disregard for human suffering, or in an especially cruel manner, as the BPH alleges.

At the same time the BPH placed little or no emphasis on suitability for parole factors from their regulations CCR Title 15 § 2281(d)(1)(3)(7)(8). For instances petitioner met the following suitability sub-factors:

1.) Under § 2281(d)(1); petitioner has no juvenile record.

2.) Under § 2281 (d)(3); petitioner has expressed remorse: See BPH Hearing Trans. Pg. 24 line(s) 19: " I feel remorse."

3.) Under § 2281(d)(7); Petitioner's present age of 73 years old make him suitable for parole.

# GROUND 4.

4.) Under § 2281(d)(8); Petitioner has made realistic plans for release. He has a place of residence, vocational trade skills, and has a previous disability that qualifies him for SSI benefits again.  His present age of 73 years also qualifies him to be eligible for Social Security benefits upon release from prison.

5.) Under 2281(c)(6): Petitioner has a lack of misconduct while in prison.  In fact petitioner has an exemplary record while in prison


**"The discussion must start with the governing regulations.  Title 15 § 2281 (c)(1) provides several sub-factors instructive in determining whether a murder was committed " in an especially heinous, atrocious, or cruel manner." 15 CCR § (c)(1).  These sub-factors include whether: " the crime involved multiple victims; it was committed in a dispassionate and calculated manner, such as an execution; the victim was abused, defiled or mutilated; the killing involved ' exceptionally callous disregard for human suffering ';**
**and the motive for the crime was either ' inexplicable ' or ' trivial ' in relation to the offense. "**


In re Smith (2003) 114 Cal. App. 4th. 343, 366 (quoting CCR § 2281 (c)(1), plus sub-factors (A)(B)(C)(D)(E).


Many of the regulations sub-factors listed are very vague and have a ' cookie cutter ' element in that they can be applied to any indeterminate sentenced prisoner's offense , and seemingly made to fit.

# GROUND 4

However when viewed in the context of the central " some evidence " inquirer before the court, the regulations provide at least some level of guidance.  In the inquirer analysis, whether a particular second-degree murder is exceptionally callous or especially heinous, atrocious, or cruel is relevant only to form a judgement that the prisoner poses a current unreasonable risk of danger to society.  The regulations " commitment offense " sub-factors guide the inquirer, in that they focus on past criminal acts as predictors of petitioner's future dangerousness.

However, the regulations " commitment offense " sub-factors cannot be used by the BPH just to prolong punishment because parole is the rule, (§ 3041(a) ), rather than the exception, and conviction for second-degree murder does not automatically render one unsuitable for parole. "

In re Smith (2003) 114 Cal. App. 4th. 343, 366 - 367.

In re Shaputis (2005) 135 Cal. App. 4th. 217.

Similarly the sole reliance on the commitment offense, or past convicted offense may pass constitutional review, but only in the initially parole process.  Petitioner contends that this is his ____ subsequent parole hearing and he is past any initial parole review process.  The BPH by continually misapplying its regulations has violated petitioner's Federal Due Process of Law rights because as the Briggs court has stated:

> " **Over time, however, should Biggs continue to demonstrate exemplary**
> **behavior and evidence of rehabilitation, denying him a parole simply**

- 35

## GROUND 4.

because of the nature of Biggs offense and prior conduct would raise serious questions involving his liberty interest. "

Biggs v. Terhune, (9th Cir. 2003) 334 F.3d. 910, 915.  See also Biggs:

" [A]ll continued future reliance on an unchanging factor such as the offense and conduct prior to imprisonment runs contrary to the rehabilitative goals espoused by the prison system and could result in due process violation. "

Biggs v. Terhune, (9th Cir. 2003) 334 F.3d. 910, 915.

Yet petitioner in the instance cause of action is being continuously denied parole primarily for his convicted and past convicted offenses.   Petitioner hereby moves the reviewing court to grant an evidentiary hearing for prove of this action by the BPH.   See what the Irons court said in regards to this matter:

"More important to the undersigned in assessing any due process violation is the fact that continuous reliance on unchanging circumstances transforms a offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole. The court asks rhetorically --- what is it about the circumstances of petitioner's crime or motivation, which are going to change?  The answer is nothing.  The circumstances of the crimes will always be what they were, and petitioner's motive for committing them will always be trivial.

1

2

## GROUND 4.

Petitioner has no hope for ever obtaining parole except perhaps that a

panel in the future will arbitrarily hold that the circumstances were not

that serious or the motive was more than trivial.    Given that no one

seriously contends lack of seriousness or lack of triviality at the present

time, the potential for parole in this case is remote to the point of non-

existence.  Petitioner's liberty interest should not be determined by such

an arbitrary, remote possibility. "

Irons V. Warden of California State Prison -- Solano (E.D. Cal. 2005) 358 F.Supp. 936,  947.

///

///

7. Ground 2 or Ground ___5___ (if applicable):

The BPH, in finding petitioner, unsuitable for parole with denial reason

# __3__ , misapplied its regulations to the commitment offense, causing

a Due Process of Law violation of petitioner's constitutional rights

under Constitution of California, and Constitution of United States

a. Supporting facts:

See attached statement of FACTS and attached GROUNDS 1 - 9.

b. Supporting cases, rules, or other authority:

See attached statement of FACTS and attached GROUNDS 1 - 9.

# GROUND 5.

## CONTENTIONS

## LEGAL FRAMEWORK.

The BPH, in finding petitioner, unsuitable for parole in denial reason # 3, misapplied its regulations to the commitment offense, causing a Due Process of Law Violation of petitioner's constitutional rights under Constitution of California, and Constitution of United States.

The BPH's primary reason for denying parole was based on the commitment offense, of petitioner.  The BPH's third denial reason was as follows:

**" And the motive for the crime was inexplicable or very trivial in relation to the offense in that apparently Mr. Ybarra was jealous over the victim and the other victim in this case, Mr. Barbutes. "**

Exhibit B: BPH Denial Trans. Pg. 2 line(s) 3 - 7.

Apparently the BPH is applying their regulations CCR Title 15 § 2281 (c)(1)(E).

Petitioner contends that the BPH has misapplied § 2281 (E) to the circumstances of his offense.  To look to the plain meaning of the words of regulation § 2281(E) , it becomes

1

## GROUND 5.

2

apparent that this regulation cannot apply, and that the BPH's proffered 'some evidence '

3

contradicts the words meaning.

4

Two words of the regulation § 2281 (E) jump out as the most important to the meaning of

5

the regulation and if the regulation applies to the circumstances of a particular prisoner's

6

offense.  The two words are:

7

                1).  Inexplicable.

8

9

                2).  Trivial  (modified by the adverb **very**)

10

11

**Inexplicable** means: not explicable; incapable of being accounted for or explained.

12

13

**Trivial** means: of very little importance or value; insignificant.

14

15

Random House Unabridged Dictionary 2nd Ed. 1993 © ISBN 0-679-42917-4; 0-679-42441-

16

5 (with CD-ROM).

17

18

     The BPH however is proffering "Mr. Ybarra was jealous", as the 'some evidence

19

standard' to prove the motive for the crime was unexplainable, or insignificant.  Jealously is

20

an emotional state of high emotion, and is not trivial or inexplicable to the human condition.

21

Jealously is the explanation for the motive of the crime.  Jealously of another man having

22

sex with one's wife is a heat of passion cause, and as such falls directly into the meaning of

23

what 2nd degree murder is suppose to be.  Jealously, by itself would never be considered

24

insignificant; therefore, petitioner contends that the BPH has no evidence to support denial

25

reason # 3.

**GROUND 5**

While all second-degree murders, by the rational of normal human reasoning , may have elements of inexplicability or triviality; these should not be a reason to deny parole because there is no particularly egregious facts here beyond the minimum necessary to support a conviction for second-degree murder.

In re Rosenkrantz (2002) 29 Cal. 4th 616,  658,  677.

Masoner v. State  (C.D. Cal. 2004) 2004 WL 1080176

Again denial reason # 3 represents a continuous reliance upon the commitment offense which can never change.   Because it can never change the BPH violates petitioner due process rights by their continuous usage of the commitment offense.

In re Smith (2003) 114 Cal. App. 4th. 343, 366 - 367.

In re Shaputis (2005) 135 Cal. App. 4th. 217.

Irons V. Warden of California State Prison -- Solano (E.D. Cal. 2005) 358 F.Supp. 936, 947.

Biggs v. Terhune, (9th Cir. 2003) 334 F.3d. 910, 915.

///

///

-61

7. Ground 2 or Ground __**6**__ *(if applicable)*:

The BPH, in finding petitioner, unsuitable for parole with denial reason

# **4+5** , misapplied its regulations to the commitment offense, causing

a Due Process of Law violation of petitioner's constitutional rights

under Constitution of California, and Constitution of United States

a. Supporting facts:

See attached statement of FACTS and attached GROUNDS 1 - 9.

b. Supporting cases, rules, or other authority:

See attached statement of FACTS and attached GROUNDS 1 - 9.

# GROUND 6

## CONTENTIONS

### LEGAL FRAMEWORK.

The BPH, in finding petitioner, unsuitable for parole in denial reason # 4 & # 5, misapplied its regulations to the commitment offense, causing a Due Process of Law Violation of petitioner's constitutional rights under Constitution of California, and Constitution of United States.

The BPH's primary reason for denying parole was based on the commitment offense, of petitioner. The BPH's fourth and fifth denial reason was as follows:

> **" And in terms of prior criminal record, Mr. Ybarra has an escalating pattern of criminal conduct and violence, and a record of violence and assaultive behavior, and has failed to profit from society's previous attempts to correct his criminality (indiscernible) prior prison terms. "**

Exhibit B: BPH Denial Trans. Pg. 3 line(s) 2 - 8.

> **" There's also a history of an unstable social life, which includes illegal narcotics, alcohol abuse for many years, as well as arrests for petty theft, assault with a deadly weapon, burglary, robbery, as well as a second-degree murder. "**

Exhibit B: BPH Denial Trans. Pg. 3 line(s) 8 - 13.

# GROUND 6.

Both of the BPH's denial reasons # 4 & # 5 are past criminal offense that like the commitment offense can never change. Because they can never change continued reliance upon them to deny parole violates petitioner's due process rights. If eligibility for parole is to depend solely upon the current or in this instance the past convicted offense, and events leading to it, the prisons will ring with legends of absurd detentions, far longer than public safety could ever require. One could imagine the story of a ninety-year old paraplegic in prison for sixty years for violently strangling his victim to death. Although he has attended all available therapy and self-help classes, and completed two advanced degrees while confined to a wheel chair, the BPH could continue to confine him within the prison walls based on the severity of his crime, or past crimes which the BPH could deem " especially heinous."

Clearly this poor gentlemen is no longer a threat to public safety, regardless of the threat he posed as a vital and potentially dangerous thirty year old.

While the above story illustrates the point of a current risk as posed to a past risk in the extreme example, at what point would an aging prisoners crime, or past crimes pass into no longer being dangerous just upon age and rehabilitative efforts?

Because in petitioner's case here we have a gentlemen that has been incarcerated for 26 years on a second-degree murder, and has reached the advanced age of 73 years old. During that 26 year period of incarceration petitioner has attended Alcoholics Anonymous, weekly religious classes at the Catholic Chapel, donated time, moneys, supplies, to charity programs;

Obtained certificates in Vocational Upholstery; and spent 26 years in pursuit of an GED never giving up. So how does this prisoner pose an unreasonable risk of danger to society? The answer to that question is he

1

## GROUND 6.

2

does not. Even with the prior second-degree murder it was committed in 1958. The current

3

crime committed in 1979. It is not just so much the 26 years

4

Incarceration, but the 26 years, plus age 46, equals the current age of 73 (as of this filing).

5

For the BPH to be allowed to use petitioners past offense to justify incarcerating petitioner

6

until his death in prison is just over punishment. The BPH has motivations for keeping all

7

indeterminate sentenced prisoners in California for life regardless of what the actual laws

8

governing parole say.

9

10

In re Smith (2003) 114 Cal. App. 4th. 343, 366 - 367.

11

In re Shaputis (2005) 135 Cal. App. 4th. 217.

12

Irons V. Warden of California State Prison -- Solano (E.D. Cal. 2005) 358 F.Supp. 936, 947.

13

Biggs v. Terhune, (9th Cir. 2003) 334 F.3d. 910, 915.

14

///

15

///

16

17

18

19

20

21

22

23

24

25

7. Ground 2 or Ground ___**7**___ (if applicable):

The BPH, in finding petitioner, unsuitable for parole with denial reason

# __**6**__ , misapplied its regulations to the commitment offense, causing

a Due Process of Law violation of petitioner's constitutional rights

under Constitution of California, and Constitution of United States

a. Supporting facts:

See attached statement of FACTS and attached GROUNDS 1 - 9.

b. Supporting cases, rules, or other authority:

See attached statement of FACTS and attached GROUNDS 1 - 9.

1

## GROUND 7.

2

## CONTENTIONS

3

## LEGAL FRAMEWORK.

4

5      The BPH in finding petitioner, unsuitable for parole with denial reason # 6

6  violated petitioner's ADA rights, and Due process of law rights under the California

7  Constitution and United States Federal Constitution.

8

9      The BPH's primary reason for denying parole in denial reason sixth was as

10  follows:

11

12

13   " And a psychological report dated October 5th, 2005 authored by Dr. Eniva is

14   conditional wherein she states at the end of her report:

15       "Mr. Ybarra's been twice convicted of murder of an unarmed

16       victim, a male and a female.  While his increasing age is an

17       (Indiscernible)   factor,   (Indiscernible)   was   a   factor   in

18       relationships where the other person (Indiscernible) While

19       substance abuse is most likely a factor in his criminal behavior,

20       it should not be assumed that Mr. Ybarra would be

21       (Indiscernible) where he felt there was sufficient justification

22       or provocation of (Indiscernible)"

23

24  Exhibit B: BPH Denial Trans. Pp. 3 & 4 line(s) 13 - 26 & 1 - 5.

25

- 67

## GROUNDS 7.

The BPH first choose to ignore any positive evidence suggested by Dr. Eniva by purposely transcribing the evidence as **(Indiscernible).**

The BPH and its agent Dr. Eniva violated petitioner's ADA and Due process rights by not giving petitioner the benefit of legal counsel before Dr. Eniva interviewed petitioner for the BPH psychological report. California Penal Code § 3041.5 (a)(3) at leased required that CDC&R appoint petitioner a CC-I correctional counselor to be present while the psychological interview was taking place. Especially in light of the fact Mr. Ybarra, before entering prison, was disabled, within the meaning of ADA, and receiving SSI disability for having memory and brain problems. California Penal Code § 3041.7 requires any life prisoner shall be entitled to be represented by legal counsel. Petitioner contends that this legal counsel should have been accessible to him for legal advice before the psychological report since anything he says could effect his legal right to parole.. In fact had petitioner had pre-psychological interview, legal counseling he would not have related certain information to Dr. Eniva. The same kind of information that later, at the parole hearing, his appointed counsel told him to never talk to a prison psychologist about when having future BPH psychological report interviews.

Dr. Eniva seems to have gone over board in her attempts to discredit Mr. Ybarra. Her report violates the DOM regulation guidelines for what a psychologist is supposed to cover for a BPH psychiatric report. The Doctor is basically limited to determining if the prisoner, or diagnose if the prisoner suffers from a mental illness, a personality disorder, including a prediction of the prisoners future level of dangerousness. Instead Dr. Eniva invade the sphere of BPH powers and concerned herself with factors such as whether or

人

*- 68*

# GROUND 7.

not petitioner Ybarra would be able to secure employment due to his advanced age. Never mind that petitioner would be eligible for social security and therefore not need to secure employment.   Or Dr. Eniva concerns over petitioner's romantic relationships. What the Doctor has done is cop an attitude over the fact the victim was a woman and became gender biased in writing her report Dr. Eniva also concluded that petitioner was a " trained as a boxer "; when in fact petitioner has never received any training as a boxer. Petitioner only used boxing like workout techniques to stay physically fit while incarcerated for the last 26 years. Quite probably the reason that petitioner is still alive at age 72 when most prisoner only live to their 60's. Dr. Eniva also leaves out petitioner's small physical statue of 5'2 150 lbs., when presenting him as a hard core convict.

Nevertheless Dr. Eniva did make the diagnoses of a personality disorder of Axis II Antisocial Dependant Traits, but the Doctor then down plays the improvement with age aspect of the diagnoses.  It's a complete understatement this type of personality disorder just doesn't improve with age.  These type of personality disorders, are well known, to show, suffers of them, go through complete recovery with advancing age.   All information petitioner can access on this disorder says that suffers usually " become normal human beings in their mid-40's".  Petitioner has reached the age of 73 indicating his recovery from this disorder is more than complete

**GROUNDS 7.**

Dr. Eniva ends her report with the very factors that the BPH latched onto for denying parole, as follows:

" And a psychological report dated October 5th, 2005 authored by Dr. Eniva is conditional wherein she states at the end of her report:

"Mr. Ybarra's been twice convicted of murder of an unarmed victim, a male and a female.  While his increasing age is an (Indiscernible) factor, (Indiscernible) was a factor in relationships where the other person (Indiscernible) While substance abuse is most likely a factor in his criminal behavior, it should not be assumed that Mr. Ybarra would be (Indiscernible) where he felt there was sufficient justification or provocation of (Indiscernible)"

Exhibit B: BPH Denial Trans. Pp. 3 & 4 line(s) 13 - 26 & 1 - 5.

Petitioner contends that while this sounds good it also would apply to any person in society. Any human being on this Earth would given sufficient justification of provocation resort to a violent action.  Therefore the BPH has not proved the "some evidence test" with this denial factor.  This denial factor has "no evidence" that petitioner would pose an unreasonable risk of danger to society and therefore cannot have his shall normally parole date fixed at this time.

**GROUND 7.**

In re Stevens (App. 2 Dist. 2004) 119 Cal. App. 4th. 1228

In re Van Houten (App. 4. Dist 2004) 116 Cal. App. 4th. 389.

In re Howard (2005) 35 Cal. 4th. 117.

In re Bolton (2003) 343 Ill. App. 3rd. 223, 800 N>E> 2d. 128

///

///

7. Ground 2 or Ground ___8___ (if applicable):

The BPH, in finding petitioner, unsuitable for parole with denial reason

# _7_ , misapplied its regulations to the commitment offense, causing

a Due Process of Law violation of petitioner's constitutional rights

under Constitution of California, and Constitution of United States

a. Supporting facts:

See attached statement of FACTS and attached GROUNDS 1 - 9.

b. Supporting cases, rules, or other authority:

See attached statement of FACTS and attached GROUNDS 1 - 9.

# GROUND 8.

## CONTENTIONS

### LEGAL FRAME WORK.

The BPH in finding petitioner, unsuitable for parole with denial reason # 7 violated petitioner's ADA rights, and Due process of law rights under the California Constitution and United States Federal Constitution.

The BPH's primary reason for denying parole in denial reason seven was as follows:

**" And therefore, a longer period of observation and evaluation of the inmate is required before the Board should find that he is suitable."**

Exhibit B: Denial Trans. Pp. 4 & 5 line(s) 25 - 26 & 1 - 2 respectively

`Petitioner is 73 years old and just on the basis of his advanced age alone is not a danger to society, nor to anyone, so what is the BPH waiting for a longer period of observation of petitioners death?

What the BPH is doing in this case, and thousand of other similarly situated indeterminate sentenced life prisoners, is that they have found a loophole in the law; and they are exploiting this loophole to carry out what they believe are more politically correct punishments for the crime of murder i.e. life without the possibility of parole.

**GROUND 8.**

The loophole that they have found is in the law of California Penal Code § 3041(b); which specifically allows the BPH to deny parole on the basis that the prisoner would pose an unreasonable risk of danger to society. And the number one reason each prisoner is found dangerous is the fact the prisoner has committed the crime of murder. So a bit of circuitous logic is set up -- parole is normal for the crime of murder, -- parole cannot be granted if the prisoner is dangerous -- the prisoner is dangerous because he has committed the crime of murder.

So it is with petitioner who is only being denied parole upon unchangeable factors which will never change; however, petitioner can change he can rehabilitate with years of trouble free incarceration, and successful programming such as A.A. And those years of incarceration are punishment that robs years of life from a finite lifetime.

In re Smith (2003) 114 Cal. App. 4th 343, 366 - 367

In re Shaputis (2005) 135 Cal. App. 4th 217.

In re Rosenkrantz (2002) 29 Cal. 4th 616, 658, 677.

In re Dannenberg (2005) 34 Cal. 4th 1061.

Irons v. warden of California State prison -- Solano (E.D. Cal. 2005) 358 F.Supp. 936, 947.

Biggs v. Terhune (9th Cir 2003) 334 F.3d. 910, 915.

///

///

///

7. Ground 2 or Ground ___9___ (if applicable):

The California Supreme Court promulgated " some evidence " test of

Board of Prison Hearing parole hearings is insufficient to protect

petitioners due process of law rights due in a parole hearing, and

Therefore violate said rights under the California Constitution,

a. Supporting facts:       and United State Federal Constitution.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

GROUND $0

3  The denial of petition for writ of habeas corpus by the San
4 Francisco County Superior Court violated petitioner's right to
5 process of law due in the Constitutional Right to Habeas Corpus
6 Relief under the California and U.S. Constitutions.

FACTS.

10  On April 18, 2006., petitioner Jose Ybarra filed a petition
11 for writ of habeas corpus in the Superior Court of California in
12 and for the City and County of San Francisco.  The Court Clerk
13 filed the writ as; " Writ No. 5342. "

14  The above said writ raised seven grounds of constitutional
15 violation of petitioner's rights.  The petition was filed pro per
16 by a 73 year old, with a less than GED education.  The writ did
17 not specify any relief requested, but instead left it up to the
18 Reviewing Court to fashion an appropriate remedy.

19  The writ's seven grounds challenged the parole decision and
20 actions of the California Board of Prison Hearings.

21  On June 20, 2006., the San Francisco Superior Court issued
22 a Summery Denial of unusual procedure, in that it contained seven
23 pages of Opinion.

24 See Exhibit G: Sup. Ct. Summery Denial of Writ No. 5342.
25 ///
26 ///
27 ///

1                        CONTENTIONS.

2

3     Recent regulatory changes have been made to the habeas corpus

4 rules.   One of these changes is that the Superior Courts of

5 California are required to appoint an attorney upon issuing a Show

6 Cause Order concerning a indigent, pro per, prisoner's filings.

7 California Rules of Court # 60.

8

9     As a result of this new rule there has been a precipitates

10 drop of -Statistical Significance in the number of 'show cause

11 orders' issued by the Superior Courts.   Instead the Superior Courts

12 are resorting to issuing informal responses, or lengthy Summery

13 Denial Opinions.

14     Petitioner contends that the Superior Court specifically issued

15 a Summery Denial for the purpose of avoiding having to appoint

16 an attorney to represent petitioner's rights in his habeas corpus

17 petition.   That the Court did this because petitioner Motioned

18 for an Evidentiary Hearing on page 27 of the FACTS section of his

19 writ.

20     Petitioner Contends that his strongest argument was raised

21 as Ground One in his writ.   However the Superior Court in its

22 Summery denial placed its opinion of Ground One on page seven

23 of the Denial.

24 See Exhibit G: Sup. Ct. Summery Denial of Writ No. 5342.

25     The Superior Court's Opinion claims petitioner did not prove

26 his contention that the BPH failed to send his Trial Attorney

27 a Penal Code § 3042 notice as required by law.

28 See Exhibit G: Sup. Ct. Summery Denial of Writ No. 5342. pg    7    ln

CONTENTIONS.

... lines 5 - 7.


However petitioner contends he did offer evidence to prove the BPH did not mail a notice to his trail attorney. The evidence offered was Exhibit F; a letter from a Professor of Law, Susan Rutberg. The Rutberg letter was written in response to the BPH sending Mrs. Rutberg a P.C. § 3042 notice on behalf of petitioner Ybarra. In the letter the professor, expresses dismay as to why she was being sent a notice from the BPH because she never represented Mr. Ybarra. In short the BPH sent a § 3042 notice to the wrong attorney which is puzzling because Mr. Ybarra's trial attorney is on the front page of the Probation Officers Report. The BPH purposely sent the § 3042 notice to the wrong attorney to avoid any positive evidence being presented from this source. The BPH does this as part of their 25 years plus illegal no parole policy.

See Exhibit F: § 3042 reply letter by Professor Rutberg.


Further the Superior Court's Opinion claimed petitioner did not offer authority, and the Court was aware of none to support the proposition that the BPH's failure to send a § 3042 notice to a prisoner's trial attorney requires the BPH to grant parole.

See Exhibit G: Sup. Ct. Summery Denial of Writ No. 5342.

pg. 7 lines 7 - 11.

CONTENTS.

Petitioner contends that the Superior Courts reasoning here does not make sense. The BPH is required to hold fair parole hearings were all the relevant and reliable evidence is heard in making a parole decision. The BPH is required by law to provide a § 3042 notice to the prisoner's trial attorney. If the BPH has failed to carry out the law, or hold a fair hearing - then what ?

Petitioner first contends that the Superior Court in considering the claims of a, pro per, prisoner's writ where that prisoner did not make any specific claims for relief, then that Court is free to fashion any relief the Court deems proper to correct the wrong done to the prisoner.

So petitioner secondly contends that the Superior Court at the very least could of issued a Order directing the BPH to hold a new hearing for petitioner, and Ordering the BPH to make sure that it sends petitioner's trial attorney a § 3042 notice when conducting the new parole hearing.

Petitioner thirdly contends, in opposition, to above, that the Superior Court should fashioned a remedy by Ordering the BPH to grant petitioner parole for violating the § 3042 notice requirement. The BPH routinely does not send § 3042 notices to life prisoner's trial attorney, so if they were ordered to do grant petitioner parole then the BPH would realize this was something they should be doing.

CONTENTIONS.

Petitioner fourth contends that the Superior Courts reliance upon 64 Ops. Cal. Atty. Gen. 882., as authority to deny petitioners argument, is misplaced.

The 64 Ops. Cal. Atty. Gen. 882., was issued in 1981; however, in 1982., the California Legislature in response to the Attorney Generals Opinion # 64, modified the Penal Code stature 3042. The legislature specifically changed the wording of § 3042 to the phrase: "the attorney who represented the defendant at trial." Thus, the Attorneys Generals Opinion # 64 is obsolete, out-dated, and no longer persuasive authority. By the plain meaning of the words of the statue the legislature intended a notice be sent by the BPH to petitioners trial attorney. The BPH violated this right and petitioner prays that the appellant court will grant an Order to Show Cause.

Finally petitioner contends that the Superior Court raised the bar to high on this contention of Ground One. When a pro per prisoner with a less than GED education files a writ of habeas corpus, he only has to reach the bar of a " prima facie " showing. This standard petitioner met. The Superior Court required something more - that petitioner prove with evidence and authority his contention of Ground One. This is what Show Cause Orders and subsequent habeas procedures such as, appointment of an attorney, Traverse, and Evidentiary Hearings are for.

///

///

///

8. Did you appeal from the conviction, sentence, or commitment?    [X] Yes.    [ ] No.    If yes, give the following information:
   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
   Unknown

   b. Result: Unknown.                              c. Date of decision:    ?

   d. Case number or citation of opinion, if known: Not Remembered.

   e. Issues raised:  (1)  Not Remembered.

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal?    [X] Yes.    [ ] No.    If yes, state the attorney's name and address, if known:

      No memory that can be recalled.

9. Did you seek review in the California Supreme Court?  [X] Yes.    [ ] No.    If yes, give the following information:

   a. Result: Maybe was denied ?                    b. Date of decision:    ?

   c. Case number or citation of opinion, if known:    If I had an appeal I don't remember.

   d. Issues raised:  (1)  Unknown

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal,
    explain why the claim was not made on appeal: The Board of Prison Hearing no longer has
    any administrative appeal.  BPH matters cannot be made upon appeal.

11. Administrative Review:
    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust
       administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975)
       52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such
       review:
       The BPH no longer has any administrative appeal besides that
       habeas corpus petition of U.S.C. section 1983 civil rights law-
       suit.

       _____

       _____

       _____

       _____

       _____

    b. Did you seek the highest level of administrative review available?    [X] Yes.    [ ] No.
       *Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]          **PETITION FOR WRIT OF HABEAS CORPUS**          Page five of six

12. Other than direct appeal, have you filed **any** other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: __N/A__

     (2) Nature of proceeding (for example, "habeas corpus petition"): _____

     (3) Issues raised: (a) _____

        (b) _____

     (4) Result *(Attach order or explain why unavailable):* _____

     (5) Date of decision: _____

  b. (1) Name of court: _____

     (2) Nature of proceeding: _____

     (3) Issues raised: (a) _____

        (b) _____

     (4) Result *(Attach order or explain why unavailable):* _____

     (5) Date of decision: _____

  c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

    N/A

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

    As soon as petitioner received the hearing transcripts from the Board of Prison Hearings, he filed this habeas corpus petition.

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court: Not applicable as petitioner filed in San Francisco County Superior Court.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 4-18-06

▸ _____ (SIGNATURE OF PETITIONER)