IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE YBARRA, ) | No. C 07-2802  MMC (PR) |
| ) | |
| Petitioner, ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |
| v. ) | |
| ) | |
| ROBERT AYERS, Warden, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

On May 30, 2007, petitioner, a California prisoner incarcerated at San Quentin State Prison and proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2005 decision by the California Board of Prison Hearings ("Board") to deny petitioner parole. Respondent filed an answer to the petition. Petitioner, although informed of the opportunity to do so, did not file a traverse.

After the matter was submitted, the Ninth Circuit issued its decision in Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), which addressed important issues relating to federal habeas review of BPH decisions denying parole to California state prisoners. The Court then ordered the parties to file supplemental briefing explaining their views of how the Hayward en banc decision applies to the facts presented in petitioner's petition. Both parties have filed supplemental briefs. Accordingly, the matter is now submitted for the Court's

review.

## BACKGROUND

In 1980, in San Francisco Superior Court ("Superior Court"), petitioner was convicted of second-degree murder and sentenced to an indeterminate term of fifteen years to life in prison. At petitioner's parole suitability hearing held on December 1, 2005, BPH read the following summary of the commitment offense into the record:

> On November 10, 1979, Mr. Ybarra entered the premises of John Barbutes [phonetic spelling], and immediately began punching Mr. Barbutes, a paraplegic, about the face and head. He then obtained a frying pan from the kitchen and beat Ms. Delgado, the victim in this case, with a frying pan to the point of unconsciousness, then began kicking her. And at one point he tried to choke her. When Mr. Barbutes tried to give some [sic] Ms. Delgado some assistance, Ybarra struck Mr. Barbutes in the head with a glass bottle and fled on foot.
>
> Ms. Delgado was hospital[ized] and died three days later from the injuries caused by Ybarra. Mr. Barbutes was also hospitalized, but he recovered from his injuries.
>
> Mr. Barbutes testified at the trial that Ybarra had told him two days earlier that he would kill Ms. Delgado.
>
> Ybarra was not arrested until November 15, 1979. While Mr. Barbutes was in the hospital, Ybarra threatened him with bodily harm should he testify.
>
> Ybarra had a long term relationship with Ms. Delgado, but she was living with Mr. Barbutes at the time of the murder.

(Transcript of Parole Hearing, Resp.'s Ex. E, at 12:1-13:8.)[1]

After reading the summary, BPH asked petitioner if the summary was accurate. Petitioner replied that not all of it was accurate, stating he had not threatened Mr. Barbutes in the hospital, he didn't know if he had hit Ms. Delgado with a frying pan, he didn't remember if he had choked Ms. Delgado or done anything other than slap her, and Ms. Delgado had died as a result of things that happened at the hospital and medical problems not related to her injuries. (Id. at 13:11-15:12.)

BPH then conducted the evidentiary portion of the hearing, at the conclusion of which BPH found petitioner was not yet suitable for parole and would pose a current unreasonable

---

[1] All further references to exhibits are to those filed by respondent in support of the Answer to the petition.

2

risk of danger to society or threat to public safety if released from prison.  (Id. at 55-59.)

After he was denied parole, petitioner filed a petition for a writ of habeas corpus in Superior Court, challenging BPH's decision; the petition was denied in an opinion issued June 20, 2006.  (Ex. F.)  Thereafter, the California Court of Appeal and California Supreme Court both summarily denied petitioner habeas relief.  (Exs. G & H.)

Petitioner thereafter filed the instant petition, which the Court has determined presents the following cognizable claims for relief: (1) petitioner's attorney did not receive proper notice of petitioner's parole suitability hearing, in violation of petitioner's right to due process; (2) BPH's decision violated petitioner's right to due process because BPH considered irrelevant and unreliable evidence in reaching its decision; (3) BPH violated petitioner's right to due process by misapplying state parole regulations in reaching its decision.

## DISCUSSION

A.   Standard of Review

A federal district court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000).  Section 2254(d) applies to a habeas petition filed by a state prisoner challenging the denial of parole.  Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

Here, as noted, the state appellate courts summarily denied petitioner relief.  Thus, the Superior Court was the highest state court to address the merits of petitioner's claim in a

reasoned decision, and it is that decision which this Court reviews under § 2254(d). See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991); <u>Barker v. Fleming</u>, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

B.   <u>Federal Due Process in Parole Suitability Hearings</u>

The Due Process Clause of the United States Constitution does not itself provide state prisoners with a federal right to release on parole. <u>Hayward v. Marshall</u>, 603 F.3d 546, 562 (9th Cir. 2010) (en banc). The substantive law of a state, however, can create a federally enforceable right to release on parole. See <u>id.</u> at 555, 559. The Ninth Circuit has determined that California's parole scheme gives rise to a cognizable liberty interest in release on parole, which liberty interest encompasses the state-created requirement that a parole decision must be supported by "some evidence" of current dangerousness. See <u>Pirtle v. California Board of Prison Terms</u>, 611 F.3d 1015, 1020 (9th Cir. 2010) (citing <u>Hayward</u>, 603 F.3d at 562-63; <u>Pearson v. Muntz</u>, 606 F.3d 606, 608-09 (9th Cir. 2010)).

In <u>Hayward</u>, the Ninth Circuit explained the law in California as it relates to parole suitability determinations:

> The California parole statute provides that the Board of Prison Terms "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual." The crucial determinant of whether the prisoner gets parole in California is "consideration of the public safety."
>
> In California, when a prisoner receives an indeterminate sentence of fifteen years to life, the "indeterminate sentence is in legal effect a sentence for the maximum term, subject only to the ameliorative power of the [parole authority] to set a lesser term." Under the California parole scheme, the prisoner has a right to a parole hearing and various procedural guarantees and rights before, at, and after the hearing; a right to subsequent hearings at set intervals if the Board of Prison Terms turns him down for parole; and a right to a written explanation if the Governor exercises his authority to overturn the Board of Prison Terms' recommendation for parole. Under California law, denial of parole must be supported by "some evidence," but review of the [decision to deny parole] is "extremely deferential."

<u>Hayward</u>, 603 F.3d at 561–62 (internal footnotes and citations omitted).

4

The Ninth Circuit further explained:

> Subsequent to Hayward's denial of parole, and subsequent to our oral argument in this case, the California Supreme Court established in two decisions, In re Lawrence and In re Shaputis, that as a matter of state law, "some evidence" of future dangerousness is indeed a state sine qua non for denial of parole in California. We delayed our decision in this case so that we could study those decisions and the supplemental briefs by counsel addressing them. As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

Hayward, 603 F.3d at 562 (internal footnotes and citations omitted).

After providing the above background on California law as it applies to parole suitability determinations, the Hayward court explained the role of a federal district court charged with reviewing the decision of either BPH or the governor in denying a prisoner parole. As set forth in Hayward, the district court must decide, under 28 U.S.C. § 2254(d), whether a decision rejecting parole was an unreasonable application of California's "some evidence" requirement, or was based on an unreasonable determination of the facts in light of the evidence. Hayward, 603 F.3d at 562–63; see also Cooke v. Solis, 606 F.3d 1206, 1208, n.2 & 1213 (9th Cir. 2010) (rejecting state's argument that constraints imposed by Antiterrorism and Effective Death Penalty Act preclude federal habeas relief on due process challenges to California courts' application of "some evidence" requirement).

C. California Law Regarding Parole Suitability Determinations

When assessing whether BPH's suitability determination was supported by some evidence, the federal court's analysis is framed by California's state regulatory, statutory and constitutional provisions that govern parole decisions. Cooke, 606 F.3d at 1213 (citing In re Rosenkrantz, 29 Cal. 4th 616 (2002)); see Hayward, 603 F.3d at 561–62.

Under California law, prisoners serving indeterminate life sentences, like petitioner herein, become eligible for parole after serving minimum terms of confinement required by statute. In re Dannenberg, 34 Cal. 4th 1061, 1069–70 (2005). Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15 ("CCR"), § 2402(a). In making such determination, BPH must consider various factors: the prisoner's social history; his past and present mental state; his past criminal history; the base and other commitment offenses, including the prisoner's behavior before, during and after the crimes; the prisoner's past and present attitude toward the crime; and any other information that bears on the prisoner's suitability for release. See CCR § 2402(b)–(d).[2]

According to the California Supreme Court, "the core statutory determination entrusted to the Board and the Governor [in determining a prisoner's suitability for parole] is whether the inmate poses a current threat to public safety[.]" In re Lawrence, 44 Cal. 4th 1181, 1191 (2008). "[T]he core determination of 'public safety' under the statute and corresponding regulations involves an assessment of an inmate's current dangerousness." Id. at 1205 (emphasis in original) (citing Rosenkrantz, 29 Cal. 4th 616; Dannenberg, 34 Cal. 4th 1061).

Importantly, as explained by the California Supreme Court:

> [A] parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional antisocial acts." These factors are

---

[2]The listed circumstances tending to show unsuitability for parole are: the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner"; a previous record of violence; an unstable social history; the prisoner previously engaged in a sadistic sexual offense; a lengthy history of severe mental problems related to the offense; negative institutional behavior. CCR § 2402(c). The listed circumstances tending to show suitability for parole are: (1) the absence of a juvenile record; a stable social history; signs of remorse; a stressful motivation for the crime; whether the prisoner suffered from battered woman's syndrome; the lack of a criminal history; the prisoner's present age reduces the probability of recidivism; the prisoner has made realistic plans for release or developed marketable skills; positive institutional behavior. CCR § 2402(d).

6

> designed to guide an assessment of the inmate's threat to society, if released, and hence could not logically relate to anything but the threat currently posed by the inmate.

Lawrence, 44 Cal. 4th at 1205–06 (internal citations omitted). Thus, as set forth by the California Supreme Court:

> [T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Shaputis, 44 Cal. 4th 1241, 1254–55 (2008).

D.  Petitioner's Claims

Petitioner claims BPH did not provide him with a hearing that comported with the requirements of federal due process. Specifically, as noted, he claims the decision to deny parole was procedurally infirm because petitioner's trial attorney was not notified of the hearing, the decision was based on unreliable and insufficient evidence that petitioner posed a current danger to society if released, and BPH misapplied applicable parole regulations in making its determination.

For the reasons discussed below, the Court finds the Superior Court's rejection of petitioner's challenge to BPH's determination was neither an unreasonable application of state law nor based on an unreasonable determination of the facts in light of the evidence.

1.  Petitioner's Hearing Comported with Procedural Due Process

Petitioner claims he was not afforded a fair hearing because his trial attorney was not notified of the hearing under California Penal Code § 3042. See Cal. Penal Code § 3042(a) (requiring BPH to provide notice of hearing to prisoner's trial attorney at least thirty days before hearing). In addressing this claim, the Superior Court found as follows:

> Petitioner contends that his trial attorney did not receive notice of the hearing, as was required under Penal Code § 3042. However, Petitioner has offered no evidence or explanation regarding the basis for his belief that the Board did not mail notice to his trial counsel. Moreover, he has offered no authority, and the Court is aware of none, for the proposition that a failure to send notice to an

7

> inmate's trial counsel under § 3042(a) requires the Board to grant the inmate parole. Rather, there exists at least some persuasive authority suggesting that § 3042 does not require notice to be sent to Petitioner's trial counsel where Petitioner is represented by another attorney at the parole hearing. [Citation omitted.]

(Ex. F at 7.)

The Court finds that even if petitioner's trial counsel was not notified of the hearing under California Penal Code § 3042, such procedural deficiency represents at most a state law violation, which is not cognizable in federal habeas corpus. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Additionally, the lack of notice did not implicate the fairness of petitioner's hearing. See Rosenkrantz, 29 Cal. 4th 657 (holding procedural safeguards must be observed by BPH at parole hearings); see also Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987) (holding relevant factor in determining whether parole board's decision had some indicia of reliability was whether prisoner was afforded opportunity to appear before, and present evidence to, parole board). Specifically, the record shows petitioner was represented by counsel at the hearing, and BPH afforded both petitioner and his counsel time to review documents relevant to petitioner's case and the opportunity to advocate for petitioner's release. In particular, at the hearing, petitioner discussed his commitment offense (Ex E at 13-18), his feelings regarding the murder (id. at 24), his social history (id. at 18, 20-23), his criminal background, including his previous second-degree murder conviction (id. at 19-20), his plans for the future (id. at 30-32), his institutional behavior (id. at 51), his age (id.), and his employment, educational, and vocational activity while incarcerated (id. at 36-39, 48-54). Additionally, both petitioner and his attorney delivered closing statements outlining the reasons why BPH should grant parole. (Id. at 49-54.) Finally, petitioner received a thorough explanation as to why BPH denied parole. (Id. at 55-59.)

Accordingly, this claim for habeas corpus relief will be denied.

2. There was Some Evidence to Support BPH's Decision

Petitioner claims there was insufficient evidence to support BPH's determination to deny him parole and that BPH misapplied the relevant parole regulations in reaching its

8

determination. The record, however, shows that BPH correctly relied on the pertinent regulatory factors, found several circumstances tending to show unsuitability for parole, and relied upon such circumstances as the basis for its conclusion that petitioner was not yet suitable for parole and would pose a current unreasonable risk of danger to society or threat to public safety if released from prison. See Hayward, 603 F.3d at 562; Lawrence, 44 Cal. 4th at 1191.

### a. The Commitment Offense

BPH explained that the commitment offense was carried out in an especially cruel manner in that petitioner beat the victim, Ms. Delgado, with a frying pan, kicked her, and attempted to choke her. (Ex. E at 55.) Additionally, BPH elaborated that the killing demonstrated a callous disregard for human suffering as Ms. Delgado certainly experienced great trauma as a result of the beating, and petitioner also struck Mr. Barbutes, a paraplegic, with a glass bottle during the attack. (Id. at 55-56.) BPH further explained that the motive for the crime, jealousy, was trivial in relation to the offense. (Id.) Such considerations concerning the commitment offense fall precisely under the regulatory factors that must be considered by BPH. See CCR § 2402(c)(1)(c)(1) (providing heinous, atrocious and cruel nature of commitment offense demonstrates unsuitability; factors to be considered in making determination include: "(A) [m]ultiple victims were attacked, injured or killed in the same or separate incidents; (B) [t]he offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) [t]he victim was abused, defiled or mutilated during or after the offense; (D) [t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; (E) [t]he motive for the crime is inexplicable or very trivial in relation to the offense.")

### b. Prior Criminal Record

BPH noted that petitioner's criminal record demonstrated an escalating pattern of criminal and violent conduct, and an inability to profit from society's previous attempts to correct his behavior. (Ex. E at 57.) In particular, BPH noted that petitioner's unstable social history included several years of abusing illegal narcotics and alcohol, as well as arrests for

9

petty theft, assault with a deadly weapon, burglary, robbery, and a prior second-degree murder conviction. (Id.) The consideration of petitioner's criminal history is a regulatory factor to be considered by BPH. See CCR § 2402(c)(2) (providing previous record of criminal violence demonstrates unsuitability).

         c.         <u>Mental Health Evaluation</u>

BPH cited the mental health evaluation of petitioner performed by psychologist Michel Inaba, Ph.D. ("Dr. Inaba") in preparation for the hearing, in which Dr. Inaba, in assessing petitioner's current dangerousness, concluded: "[I]t should not be assumed that Mr. Ybarra would be incapable of violent actions where he felt there was sufficient justification, or provocation, or where his mental capacity was compromised. Any return to the use of alcohol or drugs would further increase this risk." (Ex. E at 57-58; Ex. D at 5.)[1]

Dr. Inaba's conclusion was based on her assessment that petitioner had limited insight into the commitment offense, as well as petitioner's earlier history of violent crime (including a previous murder conviction), and his limited repertoire of social skills, and, most importantly in Dr. Inaba's opinion, his rudimentary understanding of the skills needed to form a healthy relationship with a romantic partner. (Ex. D at 3-5.) A prisoner's unstable social history is a factor to be considered under the parole regulations. See CCR § 2402(c)(3) (providing unstable social history demonstrates unsuitability).

         d.         <u>Parole Plans</u>

BPH noted that petitioner had realistic parole plans and marketable skills as an upholsterer. (Ex. E at 58.)

         e.         <u>Disciplinary History and Activities During Incarceration</u>

BPH commended petitioner for remaining "disciplinary-free" while in prison, and also for participating in many personal growth and educational programs. (Id.)

BPH concluded the hearing by stating that, based on petitioner's assaultive history, a longer period of observation and evaluation was required before BPH could find him suitable

---

[1] The hearing transcript erroneously identifies Dr. Ibana as Dr. Evina.

for parole.  (Id. at 58-59.)

        3.        <u>The Superior Court's Determination was not Unreasonable</u>

The Superior Court denied petitioner's challenge to the sufficiency of the evidence on which BPH relied to deny him parole, finding as follows:

> There is at least some evidence to support the Board's denial.  First, although Petitioner disputes several facts relied upon by the Board, as noted above, this Court may not weigh the evidence or resolve conflicts in the evidence.  Additionally, the Board's discussion of the facts is supported by the evidence that was before it, including the probation officer's report, attached as Exhibit B to Petitioner's petition, which indicates that Petitioner beat the victim with a frying pan and kicked her numerous times.
>
> Second, the Board's conclusion that the victim suffered great trauma and. distress during the beating is supported by the evidence, and it is rational to conclude that such a beating displays a callous disregard for human suffering.
>
> Third, the Board did not rely solely on the commitment offense, but also relied on the Petitioner's past conduct, including drug and alcohol use, numerous arrests, and another killing of an unarmed individual.

(Ex. F at 6 (internal citation omitted).)

Based on the above record of the evidence presented and considered at petitioner's parole suitability hearing, the Court cannot say that the Superior Court's approval of BPH's decision to deny petitioner parole was an unreasonable application of California's "some evidence" standard, or that it was based on an unreasonable determination of the facts in light of the evidence.  See <u>Hayward</u>, 603 F.3d at 563.  Specifically, the information relied upon by BPH and the Superior Court supported a determination "that the implications regarding the prisoner's dangerousness that derive from his . . . commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." <u>Lawrence</u>, 44 Cal. 4th at 1214; <u>see</u> <u>Shaputis</u>, 44 Cal. 4th at 1259-60 (upholding unsuitability determination where prisoner who, despite favorable programming and prison behavior, had not gained insight into domestic violence and wife's murder).

Accordingly, the petition for a writ of habeas corpus will be denied.

E.    <u>Certificate of Appealability</u>

A certificate of appealability will be denied as to each of petitioner's claims.  See 28 U.S.C. § 2253(c)(1)(a); Rules Governing Habeas Corpus Cases Under § 2254, Rule 11

(requiring district court to issue or deny certificate of appealability when entering final order adverse to petitioner). Specifically, petitioner has neither made "a substantial showing of the denial of a constitutional right," Hayward, 603 F.3d at 554–55 (citing 28 U.S.C. § 2253(c)(2)), nor demonstrated that his claim is "debatable among reasonable jurists." Id. at 555.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1. The petition for a writ of habeas corpus is hereby DENIED.

2. A certificate of appealability is hereby DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

DATED: September 30, 2010

*[signature]*
MAXINE M. CHESNEY
United States District Judge